[No. B207182. Second Dist., Div. Five. Dec. 22, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD JOHNSON, Defendant and Appellant.

COUNSEL

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Kenneth C. Byrne and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

Defendant and appellant Clifford Johnson (defendant) stabbed a motel employee who was attempting to eject defendant from motel property. Defendant argued at trial that the employee used excessive force when attempting to eject defendant and that defendant stabbed the employee in self-defense. A jury convicted defendant of one count of assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).)[1]

On appeal, defendant contends that the trial court erred by refusing to give defendant's proposed jury instruction—derived from CALCRIM No. 3475—that force is permitted to eject a trespasser only if the trespasser is likely to injure the property or an occupant. Defendant also contends that the trial court should have instructed the jury sua sponte with CALCRIM No. 3471,

[1] All statutory references are to the Penal Code.

which addresses whether a defendant who engaged in mutual combat or was the initial aggressor had a right of reasonable self-defense.[2]

We conclude that defendant's proposed instruction based on CALCRIM No. 3475 was irrelevant to the jury's consideration of whether defendant acted in reasonable self-defense. We further conclude that, because CALCRIM No. 3471 concerns the *preliminary* factual question of whether a defendant has the *right* to act in self-defense, the trial court's unqualified instruction on reasonable self-defense rendered that instruction unnecessary. We therefore affirm.

## BACKGROUND

Rajesh Patel owned the Poolside Motel (the motel) in Long Beach. Roger Manriquez worked at the motel in exchange for a room. His duties included housekeeping, maintenance, and security. Defendant, a homeless person from the neighborhood, at times stayed as a paying guest at the motel. Patel sometimes gave defendant permission to stay on the motel's property even when defendant was not a paying guest.

In early 2007, Manriquez was involved in an incident at the motel with a person named Anthony Speech. Speech refused to leave the motel despite numerous requests, and threatened Manriquez. Manriquez obtained a pellet gun that looked like a regular nine-millimeter firearm and fired a warning shot to frighten Speech. Manriquez was arrested and prosecuted for his role in the incident. Defendant testified that he was aware of the incident, and believed that Manriquez had used a real gun rather than a pellet gun.

On the evening of October 27, 2007, defendant went to the motel and asked Patel if he could stay on the property. Patel gave defendant permission to sit on the motel's patio, but told defendant that he could not spend the night. Defendant spent the evening on the patio smoking cigarettes and drinking beer.

Shortly after midnight, Manriquez arrived at the motel and saw defendant on the patio. Manriquez told defendant to leave, but defendant refused on the ground that he had Patel's permission to be there. Manriquez told defendant that upon Manriquez's return, defendant should be gone. Manriquez left to attend to other business.

---

[2] We refer to certain relevant Judicial Council of California Criminal Jury Instructions in effect when defendant was tried in March 2008. (CALCRIM No. 3470 (Fall 2007 ed.) pp. 923–924; CALCRIM No. 3471 (Fall 2007 ed.) p. 927; CALCRIM No. 3475 (Fall 2007 ed.) p. 931.) The subsequent revisions to these model instructions are not relevant in this case. (See CALCRIM No. 3471 (2009–2010 ed.) p. 1072; CALCRIM No. 3475 (2009–2010 ed.) p. 1076.) Other CALCRIM instructions referred to were not revised subsequent to the trial. (CALCRIM No. 3472 and CALCRIM No. 3474 (2009–2010 ed.) pp. 1074–1075.)

When Manriquez returned, defendant was still on the patio. Manriquez again ordered defendant to leave; defendant again refused. The two men struggled. Manriquez testified that defendant "flinched" as if to attack him, and that Manriquez threw defendant to the ground to protect himself.[3] Defendant, on the other hand, testified that Manriquez became enraged, grabbed defendant and threw him to the ground twice. During the struggle, defendant produced a knife and stabbed Manriquez in the abdomen and in the left hand and wrist. Defendant testified, "[T]he second time when he threw me on the ground, just before I got up, he seemed as though he was going to either stomp me or kick me. . . . But I feared for my safety. So when I got up, I tried to get up as quick as I could. I got the knife out, and I stabbed him basically to keep him off of me."

Manriquez left the patio to find a weapon. Defendant could have left the motel, but instead pursued Manriquez with the knife around some cars in the parking lot. Defendant testified that he wanted to prevent Manriquez from getting to the gun Manriquez had used during the incident with Anthony Speech.

Eventually, Manriquez picked up a broom and told defendant that if he came any closer, Manriquez would hit him. Defendant left the motel. Manriquez collapsed in the parking lot. When police arrived, they discovered Manriquez lying on his back, bleeding profusely, with six to ten inches of his intestines exposed. Manriquez was hospitalized for three weeks.

Defendant was charged with one count of assault with a deadly weapon (§ 245, subd. (a)(1)) (count 1) and one count of attempted murder (§§ 664, 187) (count 2). The People also specially alleged that defendant personally inflicted great bodily injury (GBI) on Manriquez (§ 12022.7, subd. (a)) and that defendant was ineligible for probation due to his prior felony convictions (§ 1203, subd. (e)(4)).

The trial court dismissed the attempted murder charge pursuant to section 995. The jury convicted defendant on count 1 and found true the GBI allegation. The trial court sentenced defendant to six years in state prison, consisting of the middle term of three years on count 1, plus three years on the GBI enhancement. The trial court also ordered defendant to pay $19,000 in direct victim restitution to Manriquez. Defendant timely appealed.

---

[3] Manriquez told police that he had "gestured" toward or grabbed defendant's arms or shoulders as if to escort defendant off the property, and that defendant fell to the ground.

## DISCUSSION

### A. *Applicable Principles and Standard of Review*

 "A trial court must instruct the jury, even without a request, on all general principles of law that are ' "closely and openly connected to the facts and that are necessary for the jury's understanding of the case." [Citation.] In addition, "a defendant has a right to an instruction that pinpoints the theory of the defense . . . ." ' [Citation.] The court may, however, 'properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation].' [Citation.]" (*People v. Burney* (2009) 47 Cal.4th 203, 246 [97 Cal.Rptr.3d 348, 212 P.3d 639]; see also *People v. Roldan* (2005) 35 Cal.4th 646, 715 [27 Cal.Rptr.3d 360, 110 P.3d 289], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11].)

We review defendant's claims of instructional error de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210 [17 Cal.Rptr.3d 532, 95 P.3d 811]; *People v. Sweeney* (2009) 175 Cal.App.4th 210, 223 [95 Cal.Rptr.3d 557].) "In conducting this review, we first ascertain the relevant law and then 'determine the meaning of the instructions in this regard.' [Citation.] [¶] The proper test for judging the adequacy of instructions is to decide whether the trial court 'fully and fairly instructed on the applicable law . . . .' [Citation.] ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given. [Citation.]" ' [Citation.] 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111–1112 [93 Cal.Rptr.2d 433].)

### B. *Proposed Trespass Instruction (CALCRIM No. 3475)*

#### 1. *Additional Background*

Defendant proposed the following jury instruction: "The owner or lawful occupant of a property may request that a person leave the property. If the person does not leave within a reasonable time and it would appear to a reasonable person that the person poses a threat to the property, the owner, or the occupants, then the owner or lawful occupant may use reasonable force to make the person leave. It is unlawful for the owner or lawful occupant to use force to remove a person who is not likely to injure the property, the owner, or the occupants, even though that person is in fact a trespasser."

The proposed instruction was based on the principles embodied in CALCRIM No. 3475. That model instruction, entitled "Right to Eject Trespasser From Real Property," stated, "The (owner/lawful occupant) of a (home/property) may request that a trespasser leave the (home/property). If the trespasser does not leave within a reasonable time and it would appear to a reasonable person that the trespasser poses a threat to (the (home/property)/[*sic*] [or] the (owner/[or] occupants), the (owner/lawful occupant) may use reasonable force to make the trespasser leave. [¶] *Reasonable force* means the amount of force that a reasonable person in the same situation would believe is necessary to make the trespasser leave. [¶] [If the trespasser resists, the (owner/lawful occupant) may increase the amount of force he or she uses in proportion to the force used by the trespasser and the threat the trespasser poses to the property.] [¶] When deciding whether the defendant used reasonable force, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant used more force than was reasonable. If the People have not met this burden, you must find the defendant not guilty of *<insert crime>*."

The trial court rejected the proposed instruction. The trial court stated, "[T]he law of trespass doesn't add or detract from it [the issue of self-defense]. The jury's still going to have to analyze under [CALCRIM No.] 3470 . . . whether or not those three elements were there. [¶] Namely, that the defendant reasonably believed that he was in imminent danger of suffering bodily injury, that he reasonably believed that the immediate use of force was necessary to defend against that danger. And, three, that the defendant used no more force tha[n] was reasonably necessary to defend against that danger. [¶] So with or without the law of trespass . . . [y]ou still have to do the analysis under 3470. . . . I think it actually would be confusing for the jury to throw in that additional element. I'll allow you to argue that he [Manriquez] was not allowed to use any force on him [defendant]. But, again, you're still going to have to analyze it. [¶] What amount of force did [defendant] think was coming towards him and how much force did he use to thwart it? Is he allowed under the law to pull out a knife and severely cut someone who's merely trying to place his hand on him to throw him off the property? That's the issue for the jury."

Defense counsel argued the substance of the proposed instruction to the jury. The trial court overruled the prosecutor's objection to the argument.

The trial court instructed the jury on self-defense pursuant to CALCRIM Nos. 3470, 3472 and 3474. The trial court instructed, in relevant part:

"Self-defense is a defense to assault with a deadly weapon. The defendant is not guilty of that crime if he used force against the other person in lawful self-defense. The defendant acted in lawful self-defense if: [¶] 1. The defendant reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; [¶] 2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger; and [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger. [¶] . . . The defendant must have believed that there was imminent danger of violence to himself. The defendant's belief must have been reasonable, and he must have acted because of that belief. [¶] The defendant is only entitled to use that amount of force that a reasonable person would have believed is necessary in the same situation. If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense. [¶] . . . [¶] If you find that the defendant knew that Roger Manriquez had threatened or harmed others in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable . . . . [¶] A defendant is not required to retreat. He's entitled to stand his ground and defend himself, and, if reasonably necessary, to pursue an assailant until the danger of bodily injury has passed. This is so even if safety could have been achieved by retreating. [¶] The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. . . . [¶] . . . [¶] The right to use force in self-defense continues only as long as the danger exists or reasonably appears to exist. When the attacker withdraws or no longer appears capable of inflicting any injury, then the right to use force ends."

### 2. No Error

■ We assume for purposes of this discussion that the proposed instruction was a correct statement of the law. The trial court nevertheless properly refused to give the proposed instruction. The principles set forth in CALCRIM No. 3475—on which the proposed instruction was based—apply primarily to cases in which the *owner or occupant* of property is charged with using excessive force to remove a trespasser. (CALCRIM No. 3475; see *People v. Corlett* (1944) 67 Cal.App.2d 33, 39–41, 51–52 [153 P.2d 595], disapproved on another ground in *People v. Carmen* (1951) 36 Cal.2d 768, 775–776 [228 P.2d 281]; 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Defenses, § 78, pp. 414–415.) This was not such a case. This was a case in which the *trespasser* was charged with using excessive force to resist being *ejected* from the property.

■ The principles set forth in CALCRIM No. 3475 might also apply when there is an issue of whether a trespasser had any right to defend himself against the use of force by the owner/occupant of the property. In general, if

an owner/occupant lawfully uses force to defend himself against aggression by a trespasser, then the trespasser has *no* right of self-defense against the owner/occupant's use of force. (See *In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1 [30 Cal.Rptr.2d 33, 872 P.2d 574]; *People v. Watie* (2002) 100 Cal.App.4th 866, 876–879 [124 Cal.Rptr.2d 258] [when defendant threatened victim and attempted forcibly to enter victim's home, victim had right to defend himself, and defendant had no right of self-defense against victim's use of force]; *People v. Hardin* (2000) 85 Cal.App.4th 625, 634 [102 Cal.Rptr.2d 262]; *People v. Gleghorn* (1987) 193 Cal.App.3d 196, 201–202 [238 Cal.Rptr. 82]; 1 Witkin & Epstein, *supra*, Defenses, § 75, p. 409 [person attacked may "stand his ground" and defend himself, if necessary by deadly force]; 1 Witkin & Epstein, Cal. Criminal Law (2009 Supp.) Defenses, § 75, pp. 146–148.) But, again, there was no such issue in this case. The jury was *not* asked to determine whether *Manriquez*'s actions were lawful, such that defendant had no right of self-defense. Instead, the trial court instructed the jury that "[s]elf-defense is a defense to assault with a deadly weapon," and defined for the jury the criteria governing whether defendant acted in lawful self-defense. The trial court instructed the jury *as if defendant had prevailed* on the preliminary issue presented by CALCRIM No. 3475—that is, as if the jury had determined that Manriquez was *not* justified in using force to eject defendant from the motel's property. Accordingly, the issues that remained for the jury were whether defendant reasonably believed that he was in imminent danger and that force was necessary to defend himself, and whether defendant used no more force than reasonably was necessary. (See *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 [56 Cal.Rptr.2d 142, 921 P.2d 1]; *People v. Lee* (2005) 131 Cal.App.4th 1413, 1427 [32 Cal.Rptr.3d 745].) The trial court correctly concluded that the proposed instruction was not relevant to those issues.

■ Defendant argues that the proposed instruction was necessary because the jury might have *assumed* that Manriquez was entitled to use force to remove defendant from the property, such that defendant had no right to defend himself. The trial court's instructions sufficiently informed the jury that defendant had the right to defend himself in the appropriate circumstances, and were adequate to guide the jury's determination of whether defendant acted in reasonable self-defense. ■ Absent some affirmative indication otherwise, we presume the jurors understood and followed the trial court's instructions. (*People v. Bramit* (2009) 46 Cal.4th 1221, 1247 [96 Cal.Rptr.3d 574, 210 P.3d 1171]; *People v. Gray* (2005) 37 Cal.4th 168, 217 [33 Cal.Rptr.3d 451, 118 P.3d 496].) The trial court did not err in refusing to give the proposed instruction.

## C. *CALCRIM No. 3471*

Defendant argues that the trial court had a duty to instruct the jury sua sponte with CALCRIM No. 3471. That instruction provided: "A person who engages in mutual combat or who is the first one to use physical force has a right to self-defense only if: [¶] 1. (He/She) actually and in good faith tries to stop fighting; [¶] [AND] [¶] 2. (He/She) indicates, by word or by conduct, to (his/her) opponent, in a way that a reasonable person would understand, that (he/she) wants to stop fighting and that (he/she) has stopped fighting(;/.) [¶] <Give element 3 in cases of mutual combat.> [¶] [AND [¶] 3. (He/She) gives (his/her) opponent a chance to stop fighting.] [¶] If a person meets these requirements, (he/she) then has a right to self-defense if the opponent continues to fight. [¶] [If you decide that the defendant started the fight using non-deadly force and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend (himself/herself) with deadly force and was not required to try to stop fighting.]"[4] Defendant did not request the instruction at trial.

This argument fails for reasons similar to those discussed in part B., *ante*. CALCRIM No. 3471 charges a jury to make a *preliminary determination* of whether the defendant had the *right* to use force to defend himself when the defendant and the victim engaged in mutual combat, or when the defendant was the initial aggressor. In this case, however, there was no issue whether defendant had lost the right to use reasonable force to defend himself—the trial court's instructions assumed that defendant had *not* lost that right. The question presented to the jury was whether defendant exercised that right in a reasonable manner when he stabbed Manriquez—that is, whether defendant reasonably believed that he was in danger and that force was necessary to defend himself, and whether defendant used no more force than reasonably was necessary. The trial court instructed the jury to determine whether defendant acted in reasonable self-defense, just as it would have done had defendant *prevailed* on the preliminary issue presented by CALCRIM No. 3471. CALCRIM No. 3471 was thus unnecessary to enable the jury to decide the issues in the case, and the trial court had no sua sponte duty to give the instruction.[5]

*People v. Quach* (2004) 116 Cal.App.4th 294 [10 Cal.Rptr.3d 196], upon which defendant relies, is inapposite. As relevant here, that case involved a shooting in a bar between rival gang members. (*Id.* at pp. 297–298.) The trial

---

[4] See footnote 2, *ante*.

[5] For the same reasons, the trial court properly would have refused a request by defense counsel to give the instruction. We therefore reject defendant's contention that trial counsel's failure to request the instruction constituted the ineffective assistance of counsel.

court instructed the jury pursuant to CALJIC No. 5.56, which concerned legal principles similar to CALCRIM No. 3471. (116 Cal.App.4th at p. 300 & fn. 2.) The appellate court concluded that the instruction erroneously stated the law of self-defense as applied in mutual combat situations. (*Id.* at pp. 300–302.) The court in *People v. Quach* did not address the issue presented in this case of whether the trial court had a duty to instruct on the principles of CALCRIM No. 3471 when there was no contention that the defendant had no right to self-defense and an unqualified self-defense instruction was given.

## DISPOSITION

The judgment is affirmed.

Armstrong, Acting P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 2010, S179972.