Filed 9/28/16  P. v. Mejia CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>  v.<br><br>RUDY MEJIA,<br><br>      Defendant and Appellant. | C079763<br><br>(Super. Ct. No. CR55398) |

A jury found defendant Rudy Mejia guilty of battery with serious bodily injury (count 1) and assault by means of force likely to produce great bodily injury (count 2), and found true the special allegation that he personally inflicted great bodily injury with respect to count 2.

Defendant contends the trial court prejudicially misinstructed the jury regarding contrived self-defense (CALCRIM No. 3472), the right to eject a trespasser from real property (CALCRIM No. 3475), and the presumption that a resident was reasonably afraid of death or great bodily injury (CALCRIM No. 3477).  We find no instructional error with respect to the instructions on contrived self-defense and the presumption a

1

resident was reasonably afraid of death or great bodily injury. We conclude, however, that the instruction on the right to eject a trespasser from real property (CALCRIM No. 3475) was not supported by substantial evidence. Nevertheless, because the instruction did not apply and the jury was not instructed that it was relevant to its consideration of whether defendant acted in self-defense, it is not reasonably probable that a verdict more favorable to defendant would have resulted had the instruction not been given. We therefore affirm.

## I. BACKGROUND

On August 14, 2013, defendant's son, C., was seven or eight years old. Mykel Hill had been raising C. since he was a baby. Hill also lived with his biological son, who was then four years old. The boys have the same mother, Lisa Belmontes. When Hill dropped C. off at his first day of school that morning, Hill had expressed concern that C. would be taken out of school by defendant and Belmontes. Consistent with these concerns, at noon, defendant arrived at Hill's apartment with C.

Hill testified defendant had not given him any notice that he would pick C. up from school or for the visit generally. When Hill opened the door, defendant said he had come for the low top tennis shoes he had purchased C. Defendant's demeanor was not pleasant. After Hill found the shoes, he tossed them out the door at defendant's feet using an underhand motion. He did this because he did not want defendant to enter: "There was no reason for him to come in, you know, come get them, they are his shoes, so he can go." Defendant was standing about three feet away from the doorway and behind C.; the shoes hit the side of his foot. Defendant looked down at the shoes, and then entered the apartment as he took a wild swing at Hill's head. Hill testified defendant entered uninvited.

Hill said he side-stepped the punch, and then defendant bit his arm. The two men scuffled while the door remained open. Hill testified he did not want to fight defendant. He attempted to punch defendant, but he does not believe he ever connected. Defendant

2

choked Hill, and he lost consciousness.  Hill did not see Belmontes initially, but she arrived and entered the apartment at some point.

Angel Salazar testified she was taking a nap inside the apartment and woke up to Belmontes's yelling.  Angel is Belmontes's sister, and Angel and her mother were staying with Hill while they were looking for an apartment.  Angel ran down the hallway and saw defendant and Hill fighting.  Defendant was choking Hill.  She witnessed the fight almost from the beginning, including defendant biting Hill's arm.  Angel testified defendant was the aggressor.  He punched and choked Hill.  Hill did not really fight back or try to hit defendant, but grabbed at defendant to restrain him: "[Y]ou could tell that he was out of breath, didn't really want to fight any more and it just kept going on."  In fact, Angel believed defendant could have just gotten off of Hill and left.  She saw Hill lose consciousness for a minute or so.  When Hill slowly and shakily started getting back up, defendant kicked him "full force" in the face.  Hill's body jolted and crashed back to the ground.  Then, defendant kicked an already unconscious Hill in the ribs.

Hill suffered a fractured jaw and a fractured nose.  At the time of trial, Hill said he still could not breathe well out of the left side of his nose, and would get shooting headaches "a lot more."

Lisa Belmontes testified she was coming up the stairs to the apartment when she saw the shoes fly out of the door at waist level and land on the ground.  Defendant then entered the apartment uninvited.  Defendant and Hill fought, and Belmontes got defendant off of Hill.  Next, she pushed Hill before he could stomp on defendant's head.  Belmontes testified that defendant was defending himself and got Hill in a choke hold.  She saw Hill lose consciousness.  She never saw defendant kick or bite Hill, but she agreed defendant caused Hill's injuries.

Belmontes testified she knew something was bound to happen between defendant and Hill at some point.  After the incident was over, she asked Hill, " 'Why did you have

3

to say something? You know you guys are feuding. Why did you have to say anything? Why did you throw the shoes? Why did you throw the shoes?' "

Defendant admitted during cross-examination that he and Hill did not get along. He said he could not have sent Belmontes to the door by herself to get the shoes because defendant was in the process of moving Belmontes and C. to Yuba City, and Hill and Belmontes had had an altercation about their other son.[1]

Defendant said he saw Hill grab something off of a shelf and then C.'s shoes came flying out of the apartment at C.'s face. Hill was about to grab something else off of the shelf when defendant punched Hill in the face.[2] Hill swung and missed defendant. Defendant said he had to enter the apartment and hit Hill because defendant feared for his son's safety and his own safety when he saw Hill going to grab something else off of the shelf.

Defendant testified that he wrestled with Hill, and Hill fell to the ground when Belmontes grabbed defendant. Defendant bit Hill when Hill was trying to choke defendant. While Belmontes held defendant, Hill hit defendant in the face and chest. Defendant responded with the kick to Hill's face. Belmontes was still holding defendant and Hill kept punching defendant. Then, defendant bit Belmontes to get free and put Hill in a choke hold. Defendant admitted he successfully "choked out" Hill, but denied that Hill lost consciousness. Defendant also said he did not kick Hill in the ribs.

---

[1] Belmontes testified that she was allowed to come and go from the apartment as she chose.

[2] Defendant said he did not see what this item was because he did not give Hill a chance to grab anything off of the shelf.

## II.  DISCUSSION

*A.      Standard of Review*

"If a trial court's instructional error violates the United States Constitution, the standard stated in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705], requires the People, in order to avoid reversal of the judgment, to 'prove beyond a reasonable doubt that the error . . . did not contribute to the verdict obtained.'  [Citation.]  But if a trial court's instructional error violates only California law, the standard is that stated in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], which permits the People to avoid reversal unless 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'  [Citation.]" (*People v. Mower* (2002) 28 Cal.4th 457, 484.)

It is error to give an instruction that correctly states a principle of law but has no application to the facts of the case.  (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)  However, if this is the only error, it is one of state law subject to the test articulated in *People v. Watson, supra,* 46 Cal.2d 818.  (*People v. Guiton, supra,* at pp. 1129-1130.)  "[S]uch an error is usually harmless, having little or no effect 'other than to add to the bulk of the charge.'  [Citation.]  There is ground for concern only when an abstract or irrelevant instruction creates a substantial risk of misleading the jury to the defendant's prejudice." (*People v. Rollo* (1977) 20 Cal.3d 109, 123, superseded by constitutional amendment on another ground as stated in *People v. Castro* (1985) 38 Cal.3d 301, 307-308.)  "In determining whether there was prejudice, the entire record should be examined, including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict.  [Citation.]" (*People v. Guiton, supra,* at p. 1130.)

*B.      CALCRIM No. 3475*

Defendant argues the trial court erred in instructing the jury on the right to eject a trespasser from real property (CALCRIM No. 3475) because there was no substantial

5

evidence to support a threshold finding that Hill asked him to leave. We agree but, as we will explain, it is not reasonably probable that a verdict more favorable to defendant would have resulted absent this error. The court instructed as follows:

"The lawful occupant of a home may request that a trespasser leave the home. If the trespasser does not leave within a reasonable time and it would appear to a reasonable person that the trespasser poses a threat to the home or the occupants, the lawful occupant may use reasonable force to make the trespasser leave.

"Reasonable force means the amount of force that a reasonable person in the same situation would believe is necessary to make the trespasser leave.

"If the trespasser resists, the lawful occupant may increase the amount of force he or she uses in proportion to the force used by the trespasser and the threat the trespasser poses to the property."

The People contend the error of providing this instruction was harmless. First, because there was no evidence Hill asked defendant to leave, the jury would have found the instruction did not apply and therefore not considered it in deciding the case. (See *People v. Bramit* (2009) 46 Cal.4th 1221, 1247 ["Absent any contrary indication, we presume the jury followed the instruction"].) Second, even if it applied, this instruction was irrelevant to the jury's consideration of whether defendant acted in self-defense. On these facts, we agree with the People on both points. CALCRIM No. 3475 can apply when the alleged victim is the lawful occupant of a home because it may negate the trespasser's right to self-defense. (See, e.g., *People v. Johnson* (2009) 180 Cal.App.4th 702, 709, 710 ["The principles set forth in CALCRIM No. 3475 might . . . apply when there is an issue of whether a trespasser had any right to defend himself against the use of force by the owner/occupant of the property"]; *People v. Watie* (2002) 100 Cal.App.4th 866, 878 ["If [the victim] had a right to use force to defend himself in his home, then defendant had no right of self-defense, imperfect or otherwise"].) In this case, however, the jury was not asked to determine whether Hill's actions were lawful or told that, if

6

they were, then defendant had no right to self-defense. Instead, the trial court instructed the jury on the right to self-defense and mutual combat pursuant to CALCRIM Nos. 3470 and 3471 without reference to the ability of an occupant to use reasonable force to eject a trespasser set forth in CALCRIM No. 3475. Accordingly, CALCRIM No. 3475 had no specific application in this case. (See *People v. Johnson, supra,* at p. 710 [upholding trial court's refusal to give modified version of CALCRIM No. 3475 on relevance grounds where jury was not asked to determine whether motel employee's actions were lawful such that the defendant had no right to self-defense].)

Defendant concedes that "giving an irrelevant or inapplicable instruction is generally ' "only a technical error which does not constitute ground for reversal." ' " (*People v. Cross* (2008) 45 Cal.4th 58, 67.) Nevertheless, he argues CALCRIM No. 3475 played a major role in the jury's deliberations because the prosecution relied "so heavily" upon it and the presumption that a resident was reasonably afraid of death or great bodily injury (CALCRIM No. 3477) in closing argument and "evoke[d] the sentiment of a man's right to defend his castle." We review the excerpt from the prosecutor's closing argument that defendant relies upon in context: "So the defendant comes in the house and what do we hear? We hear he's punching, we hear he's biting, we hear he's kicking, we hear he's choking Mr. Hill, and this is in Mr. Hill's home. [¶] There was an instruction that the Court gave you which is that you get to defend yourself in your own home. You can use force you need to defend your house, you can eject a trespasser. There is the presumption that you're in fear of somebody if somebody comes in your home violently. [¶] The defendant does not live in that home, he doesn't get to go into somebody else's home and beat them up."

Given that CALCRIM No. 3475 was factually inapplicable because Hill did not ask defendant to leave and the jury was not told the instruction had any bearing on the legality of defendant's conduct, we find this passage insufficient to establish any possibility of prejudice or to overcome the presumption that the jury followed the court's

7

instructions. (See *People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions"].) We also note the trial court instructed the jury that such irrelevance was possible: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." Even had CALCRIM No. 3475 not been given, it is not reasonably probable that a verdict more favorable to defendant would have resulted. (*People v. Watson, supra,* 46 Cal.2d at p. 836.)

C.      *CALCRIM No. 3477*

Defendant contends there was no substantial evidence he unlawfully and forcibly entered Hill's apartment to support instructing the jury regarding the presumption that a resident was reasonably afraid of death or great bodily injury (CALCRIM No. 3477), and the instruction did not apply because Hill initiated the attack by throwing the shoes. We disagree.

The trial court instructed the jury with a modified version of CALCRIM No. 3477: "The law presumes that the lawful occupant reasonably feared imminent death or great bodily injury to himself, or to a member of his family or household if: 1, an intruder unlawfully and forcibly entered or was entering the occupant's home; 2, the lawful occupant knew or reasonably believed that an intruder unlawfully and forcibly entered or was entering the lawful occupant's home; 3, the intruder was not a member of the lawful occupant's household or family; and 4, the lawful occupant used force against the intruder inside the home." This presumption originates in statute. (See Pen. Code, § 198.5 ["Any person using force intended or likely to cause death or great bodily injury within his or her residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury to self, family, or a member of the household when

8

that force is used against another person, not a member of the family or household, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using the force knew or had reason to believe that an unlawful and forcible entry occurred"].)

We conclude there was substantial evidence defendant unlawfully and forcibly entered Hill's apartment. (See Code Civ. Proc., § 1159 ["Every person is guilty of a forcible entry who . . . [¶] 1. By breaking open doors, windows, or other parts of a house, or by any kind of violence or circumstance of terror enters upon or into any real property"]; Pen. Code, § 602.5, subd. (a) [entry into noncommercial dwelling house without consent of owner or person in lawful possession thereof is misdemeanor].) Defendant was uninvited, and entered by taking a swing at Hill. The fact Hill tossed or threw the shoes first does not render the instruction inapplicable because there was conflicting evidence regarding the force and import of this action, and thus who started the fight. In short, CALCRIM No. 3477 was supported by substantial evidence.

Defendant also argues giving this instruction violated his due process rights because it relieved the prosecution of its burden to prove he did not act in self-defense by "excus[ing] practically any use of force by Hill." Not so. The jury was not told what, if anything, a lawful occupant could do with his presumed fear or, as we discussed in the context of CALCRIM No. 3475, how that related to defendant's self-defense claim. The jury *was* instructed that the prosecution had "the burden of proving each allegation beyond a reasonable doubt" and "the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self[-]defense or defense of another." Instructing the jury to presume the *victim* reasonably *feared* imminent death or great bodily injury if it found certain facts did not relieve the prosecution of its burden of proof. There was no instructional error with respect to CALCRIM No. 3477.

9

*D.     CALCRIM No. 3472*

Defendant asserts there was no substantial evidence to support the giving of CALCRIM No. 3472.  It provides:  "A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force."  Defendant apparently did not object to this instruction at trial.  The prosecution used the instruction in closing argument to argue, "[t]he Court instructed you that a self[-]defense cannot be contrived.  You can't make up a reason for self[-]defense.  That is what we have here because [defendant] went there for a reason, the reason was to have a confrontation."  Defendant argues there was no evidence he went to Hill's apartment to pick a fight or that he provoked the fight to create an excuse to use force.

We find no instructional error.  Belmontes testified she knew something was bound to happen between the two men eventually.  She implied Hill tempted fate merely by speaking or throwing the shoes.  When defendant arrived at Hill's door uninvited and having taken C. out of school, defendant's demeanor was not pleasant and he began the exchange by demanding shoes.  Again, the parties dispute the import of Hill's tossing of the shoes and thus the believability of defendant's reaction.  On these facts, a reasonable jury might conclude defendant went to the apartment intending to provoke a physical response to which he could respond.  As another court of appeal held in deciding whether an instruction regarding contrived self-defense was properly given, "we are mindful of the trial court's unique position for determining such issues:  'A trial judge's superior ability to evaluate the evidence renders it highly inappropriate for an appellate court to lightly question his determination to submit an issue to the jury.  A reviewing court certainly cannot do so where, as here, the trial court's determination was agreeable to both the defense and the prosecution.'  [Citation.]"  (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1381.)  The trial court reasonably determined CALCRIM No. 3472 was appropriate.

Furthermore, even if we were to assume the instruction was not supported, we would not reverse.  Defendant asserts any error was not harmless because the prosecution argued defendant went to the apartment to have a confrontation.  This appears to be the only distinguishing fact between this case and other published decisions concluding that the giving of the CALJIC equivalent of CALCRIM No. 3472 without supporting evidence was harmless error.  (See *People v. Olguin, supra,* 31 Cal.App.4th at p. 1381; *People v. Crandell* (1988) 46 Cal.3d 833, 872-873.)  But, if, as defendant contends, CALCRIM No. 3472 was not supported because there was no evidence he went to the apartment to start a fight, the prosecution's argument to the contrary does not persuade us there was any possibility the jury was misled into misapplying the court's instructions.  We are satisfied from the record that even had the instruction not been given, it is not reasonably probable that a verdict more favorable to defendant would have resulted.  (*People v. Watson, supra,* 46 Cal.2d at p. 836.)

We also reject defendant's assertion that the instruction was unfairly argumentative.

### III. DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

BUTZ, Acting P. J.

/S/

_____

HOCH, J.

11