Filed 12/7/21  In re Luis G. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re LUIS G., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>           v.<br><br>LUIS G.,<br><br>      Defendant and Appellant. | G059542<br><br>(Super. Ct. No. 20DL0802)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Bradley S. Erdosi, Judge.  Affirmed.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

\*            \*            \*

Luis G. (Luis) appeals from an order pursuant to Welfare and Institutions Code section 602 after the juvenile court found true an allegation that Luis committed misdemeanor assault (Pen. Code, § 240),[1] a lesser-included offense of the crime alleged in the petition, assault with a deadly weapon (§ 245, subd. (a)(1)). Luis argues there was insufficient evidence to sustain the petition because he was acting in self-defense against the victim's use of pepper spray.

We disagree. Luis was trespassing and threatened to kill the victim. The victim's use of pepper spray was reasonable and Luis's conduct was not self-defense. Accordingly, we affirm the court's order.

I

FACTS

In August 2020, the Orange County District Attorney filed a petition pursuant to Welfare and Institutions Code section 602 alleging Luis committed assault with a deadly weapon. (§ 245, subd. (a)(1).)

At the jurisdiction hearing, the victim, Lorenzo D. (Lorenzo), testified that he managed a property that included a parking lot in Santa Ana. He lived in an adjacent building, and his girlfriend lived in Lorenzo's motor home, which was parked in the lot. In the middle of the night on August 14, 2020, Lorenzo's girlfriend called him, stating that she felt she was in danger because "someone was trying to kick down the door" of the motor home. Lorenzo went to the lot.

Upon entering the lot, Lorenzo, who was carrying a flashlight, encountered a person later identified as Luis. Luis said, in a manner that Lorenzo characterized as "defyingly" and "offensive," "'I'm waiting for you.'" Lorenzo told Luis, "You are on private property," to which Luis responded, "'I don't care, I can do what I want. I'm

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

2

going to kill you.'" Luis, then about ten feet away from Lorenzo, took out a knife and walked towards him. Lorenzo stated Luis was coming towards him and threatening him, while he was backing away. Lorenzo testified that he warned Luis several times that he had pepper spray.

This incident was recorded on security cameras, and while parts of the video are obscured by Lorenzo's flashlight beam, Luis advancing while Lorenzo continually backed away for approximately a minute is clearly seen. Lorenzo used the pepper spray on Luis, and a few seconds letter, Lorenzo appears to fall backwards and drop the flashlight. Lorenzo's testimony on this point is incorrect – he testified Luis attacked him before using the pepper spray.

Lorenzo testified that he told Luis, "I don't want to use the spray, you should go," while Luis continued to repeat that he was going to kill Lorenzo. While Lorenzo was on the ground, Luis kicked him and tried to kill him with the knife. On the video, Lorenzo can be seen standing back up, and at that point Luis charged him and kicked him at least twice in the head. Lorenzo stood back up, backing away from Luis, and used the pepper spray a second time.

On the video, Luis can be seen attacking Lorenzo again, knocking him down. Lorenzo stood, backing away, and Luis again advanced on him. Lorenzo continuously backed away as Luis came at him yet again. For the first time, Lorenzo appeared prepared to fight, putting his hands up before walking away. Luis appeared impaired by the pepper spray at that point. Lorenzo testified that he had been cut on his left cheek and his chest during the attack. Luis left the parking lot and Lorenzo followed him down an alley. He saw Luis meet two other men.

Two police officers, Kyle Donaldson and Joshua Wiggs, in response to a call from Lorenzo's girlfriend, located Lorenzo. He was bleeding from a cut on the side of his face. Lorenzo told them that the person who stabbed him had left the scene, gave them a description, and pointed them in Luis's direction. They quickly located Luis with

3

two other men two blocks away from where they had found Lorenzo. Two of the men appeared to be pouring water on the head and face of the third man, who was later identified as Luis. Luis refused to comply with police orders. The two officers eventually arrested him. A uniformed supervisor who interacted with Luis testified that Luis said he had gone to the area because he was "high as f" and wanted "to take a bird bath." No knife was found on Luis's person or near the scene of his arrest. The two individuals found with Luis were searched, and thereafter deemed uninvolved and released.

Lorenzo identified Luis at the scene. Lorenzo told the police he did not know if he had hit Luis with the flashlight. He also repeatedly stated that Luis had a knife and that he saw the knife.

Lorenzo was transported to a hospital. The wound on his cheek required multiple stitches. He also had a cut on his right hand and contusions on his wrist, leg, ankle, and buttocks. He had significant pain in his lower back and buttocks after the attack, and as of the time of trial, he needed to use a walker as a result of the attack.

Luis also testified. He stated that on the night in question, after arguing with his girlfriend, he took a "Xanax bar."[2] He testified that on a scale of one to ten, he was feeling the effects of the Xanax at a level of nine. He stated he was unable to get home but needed to rest. He went to a laundry room in the parking lot where he stated he had rested on other occasions. He stated Lorenzo approached him "aggressively" and denied him permission to use the laundry room. Soon thereafter, he testified Lorenzo sprayed him with pepper spray and hit his forehead with the flashlight. He testified he

---

[2] "Xanax bar" is slang for a two milligram tablet of the drug alprazolam. (<https://perma.cc/BPD7-U64E>.) Alprazolam is a benzodiazepine used to treat anxiety and panic disorders. A therapeutic dose is generally .25 to .5 milligrams, administered up to three times a day, with a maximum dose of 4 milligrams per day. It may cause drowsiness and dizziness. (<https://perma.cc/LRD8-PNN8>.)

4

did not have a knife, never threatened Lorenzo, and was defending himself when he fought Lorenzo.

At the conclusion of the jurisdictional hearing, the court reviewed the evidence. The court found beyond a reasonable doubt that Luis was not acting in self-defense and did not have the right to act in self-defense. Lorenzo had the right to eject Luis from the property. The court stated that it had reviewed the video several times in detail, and it appeared that while Luis was walking toward Lorenzo aggressively most of the time, Lorenzo was walking backward. Accordingly, Lorenzo had the right to use reasonable force to make Luis leave. The court further found the use of the pepper spray to be reasonable.

With respect to Luis's testimony, the court found it was self-serving and lacked credibility, as he conveniently remembered some facts while failing to recall others. The court also found Lorenzo's testimony to be "filled with confusion" as well. Accordingly, the court found there was not proof beyond a reasonable doubt that Luis had used a knife. A knife, the court noted, was not visible in the video, which showed both Luis and Lorenzo going "round and round," with Luis "clearly [appearing] to be the aggressor." Lorenzo's testimony that he sprayed the pepper spray after he was first knocked down, however, was refuted by the video.

Nonetheless, the court noted, after Lorenzo used the pepper spray, he fell or tripped, and thereafter, Luis "is very aggressively kicking and attacking [Lorenzo]. [¶] At one point he kicks him to the ground, and then it looks like [Lorenzo] is getting up and he aggressively kicks [Lorenzo] in the face as he tries to go to the ground." The court noted, however, that a knife did not appear in the video. While a knife may have been present, the court noted, this could not be established beyond a reasonable doubt. Lorenzo's testimony alone, the court found, was not reliable enough to determine that Luis used a knife. Accordingly, the court found Luis had committed the lesser-included offense of misdemeanor assault (§ 240).

5

At the dispositional hearing, the court placed Luis on probation under specified terms and conditions, including 154 days in juvenile hall. At the time of disposition, Luis had a number of unresolved matters, including a probation violation notice and a separate case. Luis now appeals.

## II

## DISCUSSION

Luis's only argument on appeal is that the court lacked sufficient evidence to find that he did not act in self-defense. We review this claim under the substantial evidence standard. The review of any claim that a conviction is unconstitutional based on insufficiency of the evidence is "sharply limited." (*Wright v. West* (1992) 505 U.S. 277, 296-297.) When a claim of insufficient evidence is raised, a reviewing court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Johnson* (1980) 26 Cal.3d 557, 575-578.) Moreover, if the evidence presented below is subject to differing inferences, the reviewing court must assume that the trier of fact resolved all conflicting inferences in favor of the judgment. (*Jackson*, at p. 326; see *People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139.) "The conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."'" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.) The "testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

"An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) The elements of assault are: "1. The defendant did an act that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When

6

the defendant acted, [he] was aware of facts that would lead a reasonable person to realize that [his] act by its nature would directly and probably result in the application of force to someone; [¶] 4. When the defendant acted, [he] had the present ability to apply force to a person[;] AND 5. The defendant did not act [in self-defense]." (CALCRIM No. 915; see *People v. Williams* (2001) 26 Cal.4th 779, 790; *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1193-1195.)

With respect to self-defense, it is a defense to assault if the defendant reasonably believed he was in imminent danger and was required to use force to defend himself, and only used reasonably necessary force in doing so. (CALCRIM No. 3470; *People v. Brady* (2018) 22 Cal.App.5th 1008, 1014.) When raised in an assault case, the prosecution has the burden to prove the defendant's conduct was not self-defense, just as it must prove any other element of the crime. (CALCRIM Nos. 875, 915; *People v. Lee* (2005) 131 Cal.App.4th 1413, 1429.)

There was ample evidence of an assault here. While Luis makes much of who acted first, that is not the only or conclusive factor. It is inarguable that Luis repeatedly approached Lorenzo aggressively and threateningly, and eventually hit him multiple times while he was on the ground. The first four elements of an assault were clearly met. The only question remaining was whether Luis, as he contends, acted in lawful self-defense.

The evidence supports the court's conclusion that Luis did not do so. The right to self-defense does not necessarily apply when force is used on a trespasser. "The [lawful occupant] of a [property] may request that a trespasser leave the [property]. If the trespasser does not leave within a reasonable time and it would appear to a reasonable person that the trespasser poses a threat to [the property] [or] the [occupants], the [lawful occupant] may use reasonable force to make the trespasser leave." (CALCRIM No. 3475.) Although these principles apply primarily to an owner or occupant who uses force to eject a trespasser and is subsequently charged with a crime, "[t]he principles set forth

7

in CALCRIM No. 3475 might also apply when there is an issue of whether a trespasser had any right to defend himself against the use of force by the owner/occupant of the property. In general, if an owner/occupant lawfully uses force to defend himself against aggression by a trespasser, then the trespasser has *no* right of self-defense against the owner/occupant's use of force." (*People v. Johnson* (2009) 180 Cal.App.4th 702, 709-710.)

Here, Luis had no right to be on the property. He admitted as much, testifying that on prior occasions when he had used the laundry room, he had received permission before entering. This time, he did not have permission — Lorenzo testified that he repeatedly told Luis to leave. Luis claimed he did not remember Lorenzo saying that, one of several self-serving memory lapses the court mentioned. Luis did not deny that Lorenzo told him to leave. Accordingly, there was substantial evidence that Luis was a trespasser and that Lorenzo therefore had the right to use reasonable force to eject him from the property.

In this case, reasonable force, based on Luis's conduct, included pepper spray. After Lorenzo told Luis to leave, Luis aggressively approached Lorenzo while Lorenzo warned Luis several times that he had pepper spray. Lorenzo's use of pepper spray was therefore reasonable, and Luis's acts of repeatedly kicking Lorenzo on that ground were aggressive, not self-defense. As the court found, it is "very clear," from the video evidence alone that this was not a case of self-defense.

Another exception to the right to use self-defense is when the person who later claims self-defense provokes the fight in the first place. (CALCRIM No. 3472.) Based on the video evidence, Luis's actions were entirely aggressive until he was disabled by the pepper spray, after which he ran. This is yet another independent reason why Luis's actions were properly deemed not self-defense by the court.

Luis's claim that the use of pepper spray was not reasonable because Lorenzo knew or should have known that his girlfriend had called the police is

8

unavailing.  First, there is no evidence of this; the only evidence is that Lorenzo received a call from his girlfriend after Luis ran away.  Even if he did know, he had no idea how quickly the police would respond.  That the police may have been called has no bearing on whether the use of the pepper spray was reasonable.  In this case, it was, and the court had substantial evidence from which it could find the use of force was reasonable and not excessive.

Luis also claims that he "may" have been struck with Lorenzo's flashlight. The video evidence does not conclusively show this, and if anything, it is more consistent with Lorenzo's testimony that he dropped the flashlight.  Further, given Luis's testimony that he was intoxicated to a level of nine on a scale of one to ten, the court was within its discretion not to accept this self-serving testimony.

This is not a close call.  Luis's conduct throughout the entire incident was aggressive, threatening, and intermittently very violent.  He is repeatedly seen advancing toward Lorenzo while Lorenzo backs away from him.  He hit Lorenzo repeatedly on the head while Lorenzo was on the ground.  It is not until he was thoroughly disabled by the pepper spray that his conduct changes, just before he runs away.  All of this was on video.  Given these circumstances, the evidence from which the court could conclude that Luis assaulted Lorenzo and had no right to use self-defense was not just substantial, it was overwhelming.

## III

## DISPOSITION

The juvenile court's order is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MARKS, J.*


*Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.