Filed 9/28/22  P. v. Torres CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM ROBERTO TORRES,<br><br>    Defendant and Appellant. | A162882<br><br>(San Mateo County Super. Ct.<br>No. 19SF014526A) |

William Roberto Torres appeals from a judgment of conviction following a jury trial and bifurcated bench trial.  He was found guilty as charged of felony possession of methamphetamine for sale (Health & Saf. Code, § 11378) and misdemeanor possession of drug paraphernalia (*id.*, § 11364), and the court found he had two prior convictions, including a serious felony strike under Penal Code sections 667, subdivisions (b) to (j), and 1170.12, subdivision (b).

Torres's appointed appellate counsel has submitted a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, requesting that we independently review the record.  Counsel has advised Torres of his right to submit a supplemental brief, which Torres has not done.  Our independent review of the record has revealed no issues that warrant further briefing.

# I. BACKGROUND

In December 2019, the San Mateo County District Attorney filed an information charging Torres with the above-listed offenses.  A preliminary hearing followed.  Torres later moved under Penal Code section 995 to set aside the possession for sale count, arguing the prosecution did not present evidence at the hearing that Torres intended to sell methamphetamine as charged.  The court denied the motion.

Prior to trial, Torres moved under *People v. Marsden* (1970) 2 Cal.3d 118 for the appointment of new counsel for multiple reasons.  His attorney said he could continue to represent Torres.  The court found there were not "any real major conflicts" and denied the motion.

During voir dire, the prosecution used a peremptory challenge to dismiss a particular juror who indicated he did not think drug offenses should be criminalized.  Torres's counsel subsequently challenged the dismissal, arguing there was no cause because the juror had also indicated he could follow the court's instructions regardless of his personal feelings.  The court rejected the challenge.

At an April 2021 trial, the prosecution presented evidence that at 2:15 a.m. on April 9, 2019, a Belmont, California police sergeant came upon Torres sitting in a car parked in front of a residence under construction in an area where several burglaries of homes under construction had occurred. The officer noticed numerous items in the back seat of the car.  He stopped and questioned Torres, who said he was visiting a friend, Aundrea.  The officer knew an Aundrea lived across the street, and he had taken previous case reports regarding her.  Torres denied having any contraband, but he also looked left and moved his left hand closer to his thigh area.

The officer instructed Torres to exit the car, took a cell phone Torres was holding and conducted a patsearch of him. He found a Ziploc plastic bag containing methamphetamine and weighing 4.8 grams in one of Torres's pockets; a small digital scale in another pocket; and a black zippered pouch under Torres's clothing by one thigh that contained a used glass pipe resembling those used to smoke methamphetamine, an empty plastic bag and another Ziploc bag containing methamphetamine weighing 17.1 grams. Police searched Torres's car and found inside a toiletries bag another bag of methamphetamine weighing 31.9 grams and a replica gun without an orange tip to show it was fake; empty, small baggies on the car's center console; a cell phone on the driver's seat; and another scale. Five $100 bills were in Torres's wallet. All told, police found 41.46 grams of methamphetamine. Torres said he used about a gram of methamphetamine a day.

The central issue at trial was whether Torres possessed the methamphetamine for personal use only or also for sale. A San Mateo County deputy sheriff working on a narcotics task force testified as an expert in methamphetamine possession for sale over the defense objection that he was too inexperienced to testify. The expert had been on the task force since January of that year and had recently completed a 40-hour "basic narcotics investigators school." Before then, the "bulk" of his education came from his "15 years of experience on the street" interacting with drug sellers and buyers, more experienced law enforcement officers and knowledgeable members of the public. He had participated in about 200 narcotics investigations, half of which involved methamphetamine, and about 15 investigations since joining the task force. About five of the 200 investigations involved the sale of methamphetamine and another five to 10

3

involved other drugs for sale. He had spoken with about 100 methamphetamine users.

The expert testified that he and others in his field would consider a person who used a gram and a half of methamphetamine daily to be a heavy user. Users most commonly employed a pipe and a lighter to use the drug. They often did not feel comfortable carrying around a large amount of methamphetamine for fear of being robbed or losing it. Torres was found with more than a month's supply for a heavy user, the street value of which was $1,241.70.

The expert said sellers employed Ziploc-style baggies to package the methamphetamine and scales to weigh the amounts they sold. Some had weapons for protection. Also, sellers normally had one cell phone for business and another for personal matters. They did not necessarily carry a lot of cash because there were different forms of payment and some bartering also available.

The expert further testified that sellers and buyers commonly sent text messages to each other. He said text messages from one of Torres's cell phones corroborated his opinion that this case was about sales. These included a message from "Will" to "Aundrea" (whose saved contact name was "Drea") stating, "I got straight fire," slang for "I've got some good stuff," and messages from Drea in mid-March 2019 asking, "You still got some work?" with "work" being slang for "product," and, "Can I hit you up later to cop?" with "cop" being slang for "buy." There were other messages in March and April 2019 indicating communications about similar transactions.

Based on the text messages and the quantities of methamphetamine, the packaging, the scales, the replica gun and the pipe the police found, the expert opined that Torres possessed methamphetamine with the intent to sell

4

it.  He also testified that he did not know when Torres "formed the opinion to sell."

The defense presented two witnesses.  The first testified that in April 2019 he employed Torres to help him clean out about 90 percent of the property he kept at a 5,300-square-foot Redwood City warehouse, which included a collection of cars, thousands of coins and hundreds of boxes of items.  Torres used the car in which police found him to transport items from the warehouse.  The witness said that "[a]ll of this stuff in the car, for the most part, come out of the shop," including one of the scales and the replica gun, which belonged to him.  He used the small baggies for a large part of his coin collection, and he used scales to weigh coins.  Torres helped clean out the warehouse for a couple of months.

The second defense witness testified that she also was employed to help clean out the warehouse, and that Torres was found in her car, which he was using for the job.  She had dated Torres and used methamphetamine with him.  They had arranged to together buy an ounce of methamphetamine for $250 and split it in order to save money.  At the time of his arrest, she had given him money to make the buy and she was expecting a half of an ounce from him.

Torres requested the court instruct the jury as follows:  "Evidence that defendant may have possessed methamphetamine at the time of his arrest, does not allow you to speculate the defendant may have formed the intent to sell at some later time.  To prove the defendant is guilty of the crime of possession for sale of methamphetamine, the People must prove that the defendant possessed methamphetamine with the intent to sell it at the time it was found."  The trial court denied the request.  Instead, it instructed the jury consistent with CALCRIM No. 2302 that the People had to prove that

5

"when the defendant possessed the controlled substance, he intended to sell it."

At sentencing, the court denied Torres's motion under *People v. Romero* (1996) 13 Cal.4th 497 to strike the prior strike allegation because of his repeated crimes and failures at probation and treatment programs. It denied probation and sentenced him to the mid-term of two years for the possession for sale conviction, doubled for the prior strike conviction, and a concurrent 60-day term for the misdemeanor conviction, ordered him to participate in genetic marker testing, awarded him custody and conduct credits and imposed or waived certain fines and fees.

Torres filed a timely notice of appeal.

## II. DISCUSSION

We have independently reviewed the record under *Wende* and conclude there are no issues that warrant further briefing. There was sufficient circumstantial evidence to reject Torres's motion under Penal Code section 995 and to convict him of possession of methamphetamine for sale. (See *People v. Meza* (1995) 38 Cal.App.4th 1741, 1745–1746 [possession of a controlled substance for sale "can be established by circumstantial evidence and any reasonable inferences drawn from that evidence"].)

A trial court's denial of a *Marsden* motion and its decision to allow a witness to testify as an expert are each reviewed for abuse of discretion. (*People v. Loya* (2016) 1 Cal.App.5th 932, 944 [*Marsden*]; *People v. Ramos* (1997) 15 Cal.4th 1133, 1175 [expert witness].) Under this standard, we see no reason to question the trial court's rulings on these matters.

We also see no reason to question the prosecution's dismissal of a juror for possible bias, as the record shows the juror indicated he did not think drug offenses should be criminalized. (See, e.g., *People v. Pinholster* (1992)

6

1 Cal.4th 865, 913 [permitting peremptory challenges of prospective jurors with scruples about the death penalty and rejecting claim that that practice produces juries biased in favor of death "because both parties are allowed a limited number of challenges ' "against jurors harboring specific attitudes they reasonably believe unfavorable" ' "], overruled in part on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459.)

A trial court's refusal to give a special instruction is reviewed de novo. (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707.) Under this standard, we see no reason to question the trial court's rejection of the defense's requested special instruction in light of the instruction the court gave.

Rulings on *Romero* motions are reviewed for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374–375.) We see no reason to question the trial court's rejection of Torres's *Romero* motion under this standard either. Finally, we see no issues with the rest of Torres's sentencing.

### III. DISPOSITION

The judgment is affirmed.

STREETER, Acting P. J.

WE CONCUR:

BROWN, J.
GOLDMAN, J.

7