Filed 9/21/23  P. v. Martinez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>HERIBERTO MARTINEZ,<br><br>　　Defendant and Appellant. | H048748<br>(Santa Clara County<br>Super. Ct. No. C1900149) |

## I.  INTRODUCTION

Defendant Heriberto Martinez was convicted by jury of the following eight counts:  two counts of sodomy with a child aged 10 or younger (Pen. Code, § 288.7, subd. (a)),[1] two counts of sexual penetration with a child aged 10 or younger (§ 288.7, subd. (b)), one count of sexual intercourse with a child aged 10 or younger (§ 288.7, subd. (a)), one count of aggravated sexual assault of a child under the age of 14 by sodomy (§ 269, subd. (a)(3)), one count of aggravated sexual assault of a child under the age of 14 by oral copulation (§ 269, subd. (a)(4)), and one count of possessing matter depicting a person under the age of 18 engaging in sexual conduct (§ 311.11, subd. (a)). The trial court sentenced defendant to an indeterminate term of 105 years to life, consecutive to a determinate term of two years.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

On appeal, defendant contends that: (1) his constitutional rights were violated because the jury instructions may have allowed him to be convicted of uncharged conduct in counts 1 through 5; (2) the trial court erred when it refused to give a pinpoint instruction on sodomy; (3) the court erred in instructing the jury with CALCRIM No. 1191B, which allows a jury to consider proof of a defendant's charged sexual offenses as evidence of his propensity to commit other charged sexual offenses; (4) the court erred in instructing the jurors with CALCRIM No. 3551 and ordering further deliberations after they indicated that they could not reach an agreement on three counts; (5) the cumulative effect of the errors resulted in an unfair trial; (6) the court committed sentencing error; and (7) the abstract of judgment requires correction.

For reasons that we will explain, we conclude that prejudicial instructional error may have allowed defendant to be convicted of uncharged conduct on count 2, sexual penetration with a child aged 10 or younger (§ 288.7, subd. (b)). We will reverse the judgment, vacate the conviction on this count, and allow the prosecution the option to retry defendant on this count.

## II. BACKGROUND

### A. *The Trial Evidence*

The victim in all the counts was N. Doe, who was born in August 2007. Defendant, who was born in 1993, was in a dating relationship with Doe's mother. In early 2017, defendant began living with Doe's mother, Doe, and Doe's younger brother. Doe was nine years old at the time. When the mother worked, a babysitter watched Doe's younger brother while Doe was alone with defendant at times.

In December 2018, when Doe was 11 years old, her mother discovered that defendant's Facebook account contained videos of defendant having sex with Doe. There were also inappropriate photographs of Doe on defendant's Facebook page. Nine photographs and four videos of Doe were admitted into evidence at trial. The photographs included one of Doe with her genitals exposed. One of the videos shows

2

Doe orally copulating a man and then the man using his penis to penetrate her while she is in a supine position. Another video shows a man using his penis to penetrate her from behind when she is on her hands and knees. Near the end of another video, it sounds like someone is knocking on a door.

Doe's mother asked Doe about the images. Doe appeared afraid and started crying. She confirmed that defendant had engaged in sexual conduct with her. Doe's mother contacted the police, and defendant was eventually arrested.

At the time of trial in early 2020, Doe was about 12 and a half years old and in the sixth grade. She testified about three incidents involving sexual conduct by defendant.

### 1. The First Incident

Doe testified that the first incident occurred when she was 10 years old.[2] Defendant and Doe were alone in a bedroom when he started kissing her and then "raping" her. Doe explained that defendant's "private" part went inside her, where she goes "pee." She testified that defendant's "private part" also went inside of her in the "area of her butt" where she "would go poop." Both of these acts hurt Doe. Defendant stopped because it was almost time for Doe's mother to come back from work. He told Doe not to tell anyone. Doe did not tell her mother because she was afraid defendant might hurt her family. Doe testified that defendant was violent and that he sometimes hit her.

When Doe was interviewed by the police, she did not report that vaginal intercourse had occurred during this first incident. She acknowledged this point on cross-examination at trial. Likewise, on cross-examination, Doe responded affirmatively when asked whether defendant only touched her "back area and not [her] front area with his private" during the first incident. However, she subsequently explained during cross-examination that she was "really nervous" on the day that she spoke with the police, so

---

[2] Doe testified at trial with the assistance of a Spanish language interpreter.

3

she "forgot to mention" that defendant had "rap[ed]" her on "both sides" during the first incident.

## 2.  The Second Incident

Doe testified that the second incident also happened when she was 10 years old and in the bedroom.  Defendant gave her underwear and a dress and told her to put them on or he would hit her.  Doe believed defendant photographed and videotaped her during this incident.  When she was shown two of the photographs from defendant's Facebook account, she confirmed that in the photographs she was wearing the particular underwear and dress that defendant had given her during the second incident.

Doe testified that defendant "rap[ed]" her during this incident.  Regarding the rape, Doe testified that defendant's "private part" went "inside [her] private part," where she goes "pee."  She also testified that defendant put his "private part" inside her where she goes "poop."  Both acts by defendant hurt her.  Doe further testified that defendant put his finger "inside" her where she goes "pee."  She testified that this second incident ended after her mother started knocking on the bedroom door.

## 3.  The Third Incident

Doe testified that a third incident happened when she was 11 years old.  Defendant came into the bedroom and told her to put on underwear and a dress.  These clothes were different than the clothing he had given her in the prior incident.  Defendant then "raped" her.  Specifically, defendant put his "private part" inside her "front private part" where she goes "pee," and he "put his private part inside [her] back private part" where she goes "poop."  Both of these acts by defendant were painful to Doe.  This third incident ended after Doe's mother called him to pick her up.  Doe did not tell her mother about the incident because defendant was violent at times and Doe was afraid he would do something to her mother.  When describing this third incident to the police, Doe reported that defendant's private part went into her buttocks area, but she did not report that there was vaginal intercourse.

4

Doe testified that she "[c]ould . . . tell the difference" and that it felt "different" when defendant put "his private part in [her] front where [she] go[es] pee, compared to in [her] back where [she] go[es] poo."

### 4. Defendant's Interview by the Police

Defendant was interviewed by the police on December 30, 2018. Defendant initially lied and denied any abuse of Doe. He eventually contended that Doe "initiated" two encounters and that he participated "because he was blinded by lust." Defendant indicated that the first incident occurred around the end of summer 2018, and that it involved "touching and kissing" but no penetration of any kind. He indicated that the last incident was around late November 2018, and that this most recent incident was videotaped. Regarding this latter incident, defendant admitted that he inserted his penis inside Doe's vagina " 'a little bit,' " " 'not all of it.' " He also admitted that Doe performed oral sex on him. Defendant acknowledged that he had a Facebook account that he kept secret from his girlfriend. When confronted with some of the details from the videos, defendant confirmed the color of the victim's underwear.[3] Defendant denied that he inserted his finger into Doe's vagina, and he never admitted to orally copulating her or engaging in sodomy. Defendant told the police that if Doe was present, "he would ask for her forgiveness."

### 5. Doe's Interview by the Police

Doe was interviewed by the police on or about January 1, 2019, when she was 11 years old. A videorecording of the interview was admitted into evidence.[4]

---

[3] The police did not show the video to defendant during the interview.

[4] In response to questions during the interview, Doe answered in Spanish or English or a combination of both. One of the two detectives who was present in the room for the interview sometimes spoke to Doe in Spanish. He also translated into English his Spanish questions and her Spanish responses for the other detective who was present.

5

During the interview, although Doe indicated in Spanish that defendant had raped her, she appeared to have difficulty explaining what the term rape meant. She did, however, describe the specific sexual acts that defendant engaged in.

Although she was not initially clear about the exact dates of defendant's sexual abuse, and although in one instance she referred to the incidents as occurring either two or three times, Doe ultimately described three separate incidents. She also ultimately indicated that the first incident occurred when she was 10 years old, and that the second incident occurred on or before the day that her school principal died on December 4, 2017, when she was still 10 years old. She reported that the third incident occurred in approximately November 2018, when she would have been 11 years old.

Doe reported that during the first incident, defendant kissed her mouth. He also put his finger inside her front private part where she goes "pee[]." Further, defendant put his "private thing" in her "booty" where she "poop[s]." Doe cried and screamed that it hurt, and defendant covered her mouth so no one could hear her. The incident ended when defendant left to pick up Doe's mother. Defendant told Doe to keep the incident a secret.

Doe reported that during the second incident, defendant told her to wear other ladies' underwear and clothes, including a dress. He then wanted her to dance around. Defendant again put his finger inside her private area where she goes "pee[]," he put his private part in behind her where she goes "poop," and he also put his private part in the front where she goes "pee[]." During the second incident, defendant took pictures and videos of her. Doe indicated that this second incident ended when her mother and younger brother returned home.

Doe reported that the third incident involved her wearing other ladies' underwear and dresses and dancing again. Defendant also took pictures of her. During this incident, defendant kissed her in her front private part, and he put his private part inside her back part. This incident ended when Doe's mother called defendant to pick her up from work.

6

## 6. Defendant's Jail Call

After defendant was arrested, he called Doe's mother from jail. A transcript of the jail call was admitted into evidence. He stated that he had done "[s]omething that [he] should not have done" and asked to be forgiven. He also stated that he would "pay for what [he] did," he knew it was a "mistake," and he was "guilty."

Defendant did not testify at trial.

## B. *The Charges, Verdicts, and Sentencing*

Defendant was charged by first amended information with the following eight counts: two counts of sodomy with a child aged 10 or younger (§ 288.7, subd. (a); counts 1 & 4), two counts of sexual penetration with a child aged 10 or younger (§ 288.7, subd. (b); counts 2 & 5), one count of sexual intercourse with a child aged 10 or younger (§ 288.7, subd. (a); count 3), one count of aggravated sexual assault of a child under the age of 14 by sodomy (§ 269, subd. (a)(3); count 6), one count of aggravated sexual assault of a child under the age of 14 by oral copulation (§ 269, subd. (a)(4); count 7), and one count of possessing matter depicting a person under the age of 18 engaging in sexual conduct (§ 311.11, subd. (a); count 8). Counts 1 through 5 allegedly occurred on or about and between August 8, 2017, and August 7, 2018, when Doe was 10 years old. Counts 6 and 7 allegedly occurred on or about and between August 8, 2018, and December 1, 2018, when Doe was 11 years old.

At the close of evidence, defendant brought a motion for acquittal (§ 1118.1) as to all counts and specifically as to count 2, sexual penetration with a child aged 10 or younger, and count 7, aggravated sexual assault of a child under the age of 14 by oral copulation. The trial court denied the motion.

The jury found defendant guilty on all counts. On December 15, 2020, the trial court sentenced defendant to an indeterminate term of 105 years to life, consecutive to a determinate term of two years.

## III. DISCUSSION

### A. *Conviction on Counts 1 through 5 (§ 288.7) – Notice and Right to Present a Defense*

Defendant contends that his constitutional rights to notice and to present a defense were violated because the jury instructions allowed him to be convicted of uncharged conduct in counts 1 through 5. He argues that the jury was instructed that it could convict him in counts 1 through 5 of alternative sexual acts even though the amended information specified the sexual act for each of those counts. Defendant contends that other aspects of the trial, such as the unanimity instruction and the prosecutor's argument to the jury, contributed to the error. He argues that the error was prejudicial and that, to the extent his claim has been forfeited, his trial counsel rendered ineffective assistance of counsel. Defendant expressly states that this claim of "error applies only to Counts 1 through 5," and he does not raise this claim as to counts 6 through 8.

The Attorney General contends that defendant has forfeited the claim by failing to raise it below, that he was given fair notice of each charge, that the jury instructions were not incorrect or misleading, and that no prejudice has been shown.

### 1. Trial Court Proceedings

Subdivision (a) of section 288.7 prohibits *sexual intercourse* or *sodomy* with a child aged 10 or younger. Subdivision (b) of section 288.7 prohibits *oral copulation* or *sexual penetration* with such a child.

#### a. *Amended information*

Relevant here, the amended information alleged that defendant violated subdivision (a) of section 288.7 in counts 1, 3, and 4, and that he violated subdivision (b) of section 288.7 in counts 2 and 5. For each count, the amended information referred in capital letters to the crime encompassed by the cited subdivision, that is, "sexual intercourse or sodomy" or "oral copulation or sexual penetration" (capitalization omitted), followed by a specific allegation of the *single act* that defendant "did engage

8

in" as follows: sodomy (§ 288.7, subd. (a); count 1), sexual penetration (§ 288.7, subd. (b); count 2), sexual intercourse (§ 288.7, subd. (a); count 3), sodomy (§ 288.7, subd. (a); count 4), and sexual penetration (§ 288.7, subd. (b); count 5).[5]

### b. *Jury instructions*

At trial, both before the presentation of evidence and after the close of evidence, the jury was instructed with language of the amended information that defendant was charged with the crime of "sexual intercourse or sodomy," or "oral copulation or sexual penetration," by "engag[ing] in sodomy" with Doe in count 1, "engag[ing] in sexual

---

[5] For example, the amended information alleged as follows regarding counts 1 and 2:

"**COUNT 1**

"On or about and between August 8, 2017 and August 7, 2018, in the County of Santa Clara, State of California, the crime of SEXUAL INTERCOURSE OR SODOMY WITH A CHILD 10 YEARS OF AGE OR YOUNGER, in violation of PENAL CODE SECTION 288.7(a), a Felony, was committed by HERIBERTO MARTINEZ who, as a person eighteen years of age or older, did engage in sodomy with a child, [N.] Doe, who was 10 years of age or younger, namely, 10.

"[¶] . . . [¶]

"**COUNT 2**

"On or about and between August 8, 2017 and August 7, 2018, in the County of Santa Clara, State of California, the crime of ORAL COPULATION OR SEXUAL PENETRATION WITH A CHILD 10 YEARS OF AGE OR YOUNGER, in violation of PENAL CODE SECTION 288.7(b), a Felony, was committed by HERIBERTO MARTINEZ who, as a person eighteen years of age or older, did engage in sexual penetration with a child, [N.] Doe, who was 10 years of age or younger, namely, 10."

penetration" in count 2, "engag[ing] in sexual intercourse" in count 3, "engag[ing] in sodomy" in count 4, and "engag[ing] in sexual penetration" in count 5.[6]

Further, after the close of evidence and before argument by the parties, the jury was also instructed regarding the elements of the offenses in counts 1 through 5 as follows:

"The Defendant is charged in *Counts One, Three, and Four* with . . . engaging in *sexual intercourse or sodomy* with a child ten years of age or younger, in violation of Penal Code Section 288.7.

"To prove that the Defendant is guilty of this crime, the People must prove that:

"One, the Defendant engaged in an act of *sodomy or sexual intercourse* with [N.] Doe;

"Two, when the Defendant did so, [N.] Doe was ten years of age or younger;

"And, three, at the time of the act the Defendant was at least 18 years old.

"The Defendant is charged in *Counts Two and Five* with engaging in *oral copulation or sexual penetration* with a child ten years of age or younger, in violation of Penal Code Section 288.7.

---

[6] For example, the written jury instructions stated that defendant was charged in counts 1 and 2 as follows:

"**COUNT 1** [¶] On or about and between August 8, 2017 and August 7, 2018, in the County of Santa Clara, State of California, the crime of SEXUAL INTERCOURSE OR SODOMY WITH A CHILD 10 YEARS OF AGE OR YOUNGER, in violation of PENAL CODE SECTION 288.7(a), a Felony, was committed by HERIBERTO MARTINEZ who, as a person 18 years of age or older, did engage in sodomy with a child, [N.] Doe, who was 10 years of age or younger, namely, 10.

"**COUNT 2** [¶] On or about and between August 8, 2017 and August 7, 2018, in the County of Santa Clara, State of California, the crime of ORAL COPULATION OR SEXUAL PENETRATION WITH A CHILD 10 YEARS OF AGE OR YOUNGER, in violation of PENAL CODE SECTION 288.7(b), a Felony, was committed by HERIBERTO MARTINEZ who, as a person 18 years of age or older, did engage in sexual penetration with a child, [N.] Doe, who was 10 years of age or younger, namely, 10."

10

"To prove that the Defendant is guilty of this crime, the People must prove that:

"One, the Defendant engaged in an act of *oral copulation or sexual penetration* with [N.] Doe;

"Two, when the Defendant did so, [N.] Doe was ten years of age or younger;

"And, three, at the time of the act the Defendant was at least 18 years old." (Italics added; see CALCRIM Nos. 1127, 1128.)

The jury was also instructed regarding unanimity as follows: "The Defendant is charged with sexual offenses in Counts One through Seven, sometime during the period of August 8, 2017, and December 1, 2018. The People have presented evidence of more than one act to prove the Defendant committed these offenses. [¶] You must not find the Defendant guilty, unless you all agree the People have proved the Defendant committed at least one of these acts and you all agree on which act he committed." (See CALCRIM No. 3500.)

The jury was further instructed regarding separate offenses as follows: "Each of the counts that's charged in this case is a separate crime. You must consider each count separately and return a separate verdict for each one." (See CALCRIM No. 3515.)

### c. *Prosecution argument to the jury*

In argument to the jury, the prosecutor told the jury to first consider the victim's trial testimony and her statement to the police. Regarding Doe's credibility, the prosecutor told the jury to consider the emotion she showed; that she had no motive to lie; and that she "correct[ed]" the police by telling them, " 'No' at the appropriate times when things didn't happen," which indicated that she was "able to compartmentalize, to a large degree, when these things happened." In this regard, the prosecutor observed that Doe described "three instances" both to the police and on the witness stand, and that "the basics really stay the same, the three instances of abuse, and the nature of the conduct." To the extent Doe omitted certain sex acts when describing the three incidents either to the police or at trial, the prosecutor "urge[d]" the jury "to understand why maybe she

11

forgot something or why she had a more full and complete description to the police in a quieter, safer setting, compared to here, where it was a little bit harder to articulate and remember all of those things."

The prosecutor told the jury to then look at the other evidence, such as the videos of abuse, defendant's confession to the police, and defendant's jail call to the victim's mother, as those other pieces of evidence "corroborate[d]" the victim's statements in court and to the police. For example, the prosecutor observed that Doe indicated that one of the incidents of abuse ended when her mother came home, and the video supports that statement by Doe. The prosecutor urged the jury to not reason that anything that was not on the video fell short of proof beyond a reasonable doubt.

The prosecutor then referred to the verdict forms, which identified the specific sexual act underlying each count.[7] Based on the videos of sexual abuse, the prosecutor told the jury that it could "go and very safely mark guilty as to a few of them. One, oral copulation, I think that's Count Two; Count One is sexual intercourse with her, we saw that; and then you'll see in the other videos very clear evidence of that; and the proof for the other counts comes from her testimony and her statements to the police."

The prosecutor then addressed the relationship between the counts and the evidence as follows:

"And so why don't we talk about the counts real quick. And here's what I've done. So in the interview with the police she lays it all out, all right, and I've listed up there for each count the time stamp on the interview where you can find her, the key point where she describes the basis for each of these counts. I'm going to leave that up there for a minute, because I do see some of you writing it down. Thank you.

"Now what you'll notice, just by looking at the time stamps is, . . . there's some jumping around. So like she'll talk about the first instance and then kind of move to the

---

[7] We describe the verdict forms in more detail below.

12

second and then the third, but then they'll jump back and say 'Well, now wait.  Did that also happen during the first instance, did he use his finger?  Oh, yeah, he did.'  So that's why I put the time stamps back there.

"So I recommend you go in show that video, open it up, and listen to it.  If you need a second time, go for it, and kind of pay attention to when these time stamps are coming up, and you'll see there were two instances at age ten, and then there's one instance, the third time, at age 11.  Okay?

"And during each of those instances, certain things would happen.  All right?  In one instance, there was oral copulation, in another there was sexual intercourse and digital penetration, penetration with a finger.  And so you'll see her articulate those and you can match it up to the counts and that can be a helpful way to do it.

"When you heard the jury instructions, they can be kind of complex.  And so one way to do it is to have the verdict forms right there, One through Eight, and kind of use those as a guide.  All right.  Count One, let's see what we've got, let's talk about it.

"And Counts One through Five, as the instructions describe, Counts One through Five are when she was age ten, all right, we talked about those first two instances, and Counts Six and Seven are when she's age 11.  One through Five, age ten, the first two instances; Counts Six through Seven talk about when she was 11."

The prosecutor proceeded to briefly address the elements of the offenses, stating in part:  "The elements, the actual elements of each crime are in the instructions.  And if I start going through each one, you'll all start glazing over.  And so it's a little easier when you get back there to kind of go through it on your own, and take your time.  [¶]  . . . [¶]  . . .  And so when you go to each of those counts, you'll see the elements.  [¶]  Let me give you an example.  Let's talk about oral copulation on a child under 11.  . . .  Look, for this crime, 'Defendant engaged in an act of oral copulation with [Doe],' that just means the mouth of one person making contact with the genitals of another."  At this point, defense counsel objected on the ground that the prosecutor "misstate[d] the charges."

13

The trial court overruled the objection, and the prosecutor continued with argument to the jury.

### d. *Defense argument to the jury*

Defendant's trial counsel referred to the "pretty gruesome, graphic video" and acknowledged that "it's unforgiveable" but that counsel was "not here to ask for your forgiveness." Counsel observed that defendant told the police that he would apologize to Doe, and that he asked Doe's mother for forgiveness. Counsel argued that defendant "knows he screwed up," and that the jury's role was not to condemn or to forgive, but "to listen to the evidence and decide if the if the prosecution has met his burden as to each and every element of each crime that [defendant] has been accused of."

Defense counsel explained that the prosecutor had charged "eight different crimes that correlate with" three different incidents. Relevant here, defense counsel stated that "[t]he first five [crimes] occurred in a time frame when [Doe] was ten years old, and that's from August 8, 2017, to August 7, 2018. [¶] And within that time frame [the prosecutor] has charged sodomy which is penetration of the anus, digital penetration which is penetration of the vagina with the finger, sexual intercourse of the vagina, sodomy again and digital penetration. [¶] . . . Now for those five charges, [the prosecutor] must prove beyond a reasonable doubt that at the time of all those instances she was ten years old."

Defense counsel proceeded to address "three subjects" about the case: (1) digital penetration, (2) Doe's age, and (3) sodomy. Counsel stated that part of this discussion would require the jury to watch the sexual videos admitted into evidence. Counsel admitted that the "videos are horrific, they are proof of some of the charges," but that "they are also proof of the absence of some of the charges."

### e. *Prosecution rebuttal argument*

The prosecutor reiterated that the jury should first consider Doe's testimony and statement to the police. The videos of abuse, the prosecutor argued, "help[ed]

14

corroborate" Doe's statements and were not simply the extent of the abuse.  The prosecution contended the evidence was overwhelming and that the jury should reach the same conclusion.

### f.  *Verdict forms*

Each verdict form for counts 1 through 5 specifically identified the *single* sexual act underlying each count consistent with the information.  For example, the verdict form for count 1 required the jury to indicate whether defendant was guilty of sodomy.

### g.  *Jury deliberation and notes*

The jury began deliberating on March 11, 2020, for nearly three hours.  During this time, the jury sent four notes with questions regarding certain evidence or requesting readback of certain testimony.

During the second day of deliberations on March 12, 2020, it appears from the record that the jury again deliberated for nearly three hours.

During the third day of deliberations on March 16, 2020, the jury deliberated for a total of approximately four and a half hours.  During this time, the jury sent two notes.  One note requested a readback of certain testimony and a readback of defense counsel's argument "outlining the three things she wants to focus on."  (Some capitalization omitted.)  In the other note, the jury wrote the following:  "Looking for [clarification] on charges – count 1, count #2 count #3 count #4 count #5 and the [difference] between the charges.  explain the dublite [sic] charges – Are they for the same act or for different one's [sic]."  (Some capitalization omitted.)  The trial court and the parties apparently had an unreported "brief[]" discussion about the note before the court sent back the following written response to the jury:  "The following instructions contain the answers to your questions:  3515 'Multiple Counts:  Separate Offenses' 3500 'Unanimity' 1127 (counts 1, 3 & 4) 1128 (counts 2 & 5)  Let me know if you have a more specific question."

During the fourth day of deliberations on March 17, 2020, the jury sent three more notes, two of which requested readback of certain testimony. The jury ultimately reached a verdict after deliberating for less than three hours that day.

### 2. The Parties' Contentions

As recited above, defendant was charged in each of counts 1 through 5 with a *single* specific sexual act: sodomy in counts 1 and 4 (§ 288.7, subd. (a)), sexual penetration in counts 2 and 5 (§ 288.7, subd. (b)), and sexual intercourse in count 3 (§ 288.7, subd. (a)). However, the two jury instructions for these five counts combined the elements for two different sexual acts into a single instruction rather than individually setting forth the elements for a *single* sexual act in a single instruction. In this regard, the instruction pertaining to counts 2 and 5 (sexual penetration) stated that defendant was "charged" in these counts with and that the People "must prove" the elements of sexual penetration *or oral copulation* with a child aged 10 or younger. The instructions pertaining to counts 1, 3, and 4 (sodomy, sexual intercourse, and sodomy, respectively) stated that defendant was "charged" in these counts with and that the People "must prove" the elements of sodomy *or* sexual intercourse.

Defendant contends that his constitutional rights to notice and to present a defense were violated because the jury instructions for counts 1 through 5 "expanded the conduct on which the jury could have relied to convict" him and allowed him to be convicted of uncharged conduct in those counts. (See *People v. Williams* (2013) 56 Cal.4th 630, 681 [federal and state Constitutions " 'require that a criminal defendant receive notice of the charges adequate to give a meaningful opportunity to defend against them' "].) We also understand defendant to contend, either as part of this argument or as an alternative argument, that the two instructions stating the elements for counts 1 through 5 were incorrect because counts 1 through 5 were each based on one *single* specific sexual act, not alternative sexual acts. We understand defendant to raise these arguments only as to counts 1 through 5, and not as to counts 6 through 8.

16

We understand the Attorney General to contend that counts 1 through 5 proceeded to verdict under the same theory as charged in the operative information: two counts of sodomy, two counts of sexual penetration, and one count of sexual intercourse. The Attorney General argues that to the extent the prosecutor referred to count 2 as oral copulation, when it was charged as sexual penetration, the prosecutor simply "misspoke" or engaged in a "slip of the tongue."

As the Attorney General makes no contention that the *single* specific sexual act alleged in counts 1 through 5 were expanded by the prosecutor to include alternative, uncharged sexual acts as a basis for the jury to find defendant guilty, we proceed to analyze defendant's claim on appeal as an issue of whether the jury instructions were erroneous and prejudicial for these five counts as charged.

### 3. Law

A "trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense. [Citation.]" (*People v. Merritt* (2017) 2 Cal.5th 819, 824.) At the same time, "[i]t is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case. [Citation.]" (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) A trial court also has "the duty to screen out invalid theories of conviction, either by appropriate instruction or by not presenting them to the jury in the first place." (*Id.* at p. 1131.)

"A claim of instructional error is reviewed de novo. [Citation.]" (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) " 'When we review challenges to a jury instruction as being incorrect or incomplete, we evaluate the instructions as a whole, not in isolation. [Citation.] "For ambiguous instructions, the test is whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction." ' [Citation.]" (*People v. Nelson* (2016) 1 Cal.5th 513, 544 (*Nelson*).) "The reviewing court also must consider the arguments of counsel in assessing the probable impact of the instruction on the jury. [Citations.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1202.)

" 'Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.]  But that rule does not apply when . . . the trial court gives an instruction that is an incorrect statement of the law.  [Citations.]" (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012.)  If "the instruction given was wrong, the forfeiture rule does not apply." (*Id.* at p. 1012; accord, *People v. Capistrano* (2014) 59 Cal.4th 830, 875, fn. 11 [if a defendant on appeal "asserts that an instruction is incorrect in law an objection is not required" below]; see § 1259 ["appellate court may . . . review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby"].)

### 4.  Analysis

#### a.  *Jury instruction regarding counts 2 & 5 (sexual penetration)*

We first determine that the jury instruction describing the elements for counts 2 and 5 (sexual penetration) was incorrect, and that defendant's claim on appeal is not forfeited as to these two counts.[8]  We reach these conclusions based on the following reasons.

The jury was correctly instructed before and after the presentation of evidence that defendant was charged by information with sexual penetration in counts 2 and 5. Specifically, the jury was instructed that defendant was charged in counts 2 and 5 with "the crime of oral copulation or sexual penetration" which was committed by defendant who "did engage in sexual penetration."  In a subsequent instruction regarding the elements of the offense, the jury was *also* instructed that defendant was charged in counts 2 and 5 with "oral copulation *or* sexual penetration," that in order to find

---

[8] In view of our conclusion that defendant's claim has not been forfeited, we do not reach his alternative claim for ineffective assistance of counsel.

defendant guilty "the People must prove that[] [¶] . . . the Defendant engaged in an act of *oral copulation or sexual penetration* with [N.] Doe," and that "when the Defendant did so, [N.] Doe was ten years of age or younger." (Italics added.) This instruction was legally incorrect, as defendant was charged in counts 2 and 5 only with sexual penetration, not oral copulation, on a child aged 10 or younger.

Significantly, during argument to the jury, the prosecutor reinforced this incorrect instruction that counts 2 and 5 encompassed sexual penetration *or* oral copulation by telling the jury that, based on the video of abuse, the jury could "go and very safely mark guilty as to a few of them," including "*oral copulation, I think that's Count Two . . . .*" (Italics added.) Further reinforcing this incorrect jury instruction that counts 2 and 5 included oral copulation, not solely sexual penetration, the prosecutor stated the following regarding the elements of all the charges in general: "And so when you go to each of those counts, you'll see the elements. [¶] Let me give you an example. Let's talk about oral copulation *on a child under 11. . . .* Look, for this crime, '*Defendant engaged in an act of oral copulation with* [N.],' that just means the mouth of one person making contact with the genitals of another." (Italics added.) As we have recited, none of counts 1 through 5, which alleged sexual acts with a child aged 10 or younger, involved oral copulation. Indeed, defense counsel objected to this latter statement by the prosecutor on the ground that it "misstates the charges," but the trial court overruled the objection.[9]

The Attorney General observes that the verdict forms correctly identify the single sexual act charged for each count, e.g., sexual penetration for counts 2 and 5, and argues

---

[9] Although it is not clear from the record, the trial court may have overruled defense counsel's objection (and given the instructions at issue on appeal) on the mistaken assumption that the prosecutor had charged each of counts 1 through 5 based on alternative acts, rather than as having alleged a single act for each count. As defendant on appeal observes, the trial court during pretrial motions in limine referred to the "alternative identification of the charges in counts 1 through 5." The court characterized the original information as alleging "ten very distinct [acts] between counts 1 and 5, as opposed to five distinct acts."

19

that this was sufficient to tie the correct charges (here, sexual penetration) to the verdicts ultimately rendered by the jury. We are not persuaded that the verdict forms necessarily operated to correct the error in the jury instruction for counts 2 and 5. (See *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1271, 1272, 1274 [explaining that whether the crime listed on the verdict form would be disregarded as clerical error and surplusage depended on a review of the record as a whole, including the information, the jury instructions, and the parties' arguments to the jury].) As we have explained, the jury instruction for counts 2 and 5 allowed the jury to find defendant guilty based on oral copulation, and the prosecutor expressly argued to the jury to so find on at least count 2.

We are also not persuaded by the Attorney General's contention that the unanimity instruction cured the error in the wording of the instruction for counts 2 and 5. The Attorney General contends that "the jurors . . . would not reasonably have submitted a verdict form convicting [defendant] of a specific sex crime if they did not unanimously agree on the act at issue." While we agree that the instructions informed the jury that they had to unanimously agree on the act for each count, as we have explained the instruction specific to counts 2 and 5 indicated that the jury could find defendant guilty based on the alternative, uncharged act of oral copulation.

We lastly observe that the prosecutor in argument appeared to rely on a visual aid that apparently linked each count to specific acts that the victim reported during her police interview. In this regard, the record reflects the following statement by the prosecutor during argument to the jury: "And so why don't we talk about the counts real quick. And here's what I've done. So in the interview with the police she lays it all out, all right, and I've listed up there for each count the time stamp on the interview where you can find her, the key point where she describes the basis for each of these counts.

20

I'm going to leave that up there for a minute, because I do see some of you writing it down."[10]

Notwithstanding the prosecutor's apparent attempt to link the victim's statements during the police interview to each count, we observe that the jury later during deliberations sent a note nevertheless seeking clarification regarding counts 1 through 5 and whether those counts referred to the "same act or for diff[e]rent one[]s." In response, the trial court simply referred the jury back to several instructions, including the incorrect instruction that indicated counts 2 and 5 encompassed oral copulation or sexual penetration.

In sum, the jury instruction for counts 2 and 5 incorrectly stated that defendant could be found guilty based on either oral copulation or sexual penetration. Based on the record as a whole, including the instruction and the prosecutor's arguments to the jury, " ' "there is a reasonable likelihood that the jury misunderstood and misapplied the instruction" ' " in this regard. (*Nelson*, *supra*, 1 Cal.5th at p. 544.)

### b. *Jury instruction regarding counts 1, 3 & 4 (sodomy and sexual intercourse)*

We likewise determine that defendant's claim of error regarding the jury instruction describing the elements for counts 1 (sodomy), 3 (sexual intercourse), and 4 (sodomy) is not forfeited.[11] Although this instruction could be construed as legally correct, there is a reasonable likelihood that the jury misunderstood and misapplied the instruction in light of the companion instruction regarding counts 2 and 5 that we have

---

[10] It does not appear from the record on appeal that the prosecutor's visual aid was lodged with the trial court or admitted into evidence. The prosecutor's visual aid is not included in the record on appeal. (See Cal. Rules of Court, rule 8.320(e) [exhibits that are "admitted in evidence, refused, or lodged are deemed part of the record" on appeal].)

[11] In view of our conclusion that defendant's claim has not been forfeited, we do not reach his alternative claim for ineffective assistance of counsel.

21

just discussed and in light of the record as a whole.  We reach these conclusions based on the following reasons.

The jury was initially correctly instructed before and after the presentation of evidence that defendant was charged by information with sodomy in counts 1 and 4, and sexual intercourse in count 3.  Specifically, the jury was instructed that defendant was charged in counts 1 and 4 with "the crime of sexual intercourse or sodomy" which was committed by defendant who "did engage in sodomy."  Regarding count 3, the jury was instructed that defendant was charged with "the crime of sexual intercourse or sodomy" which was committed by defendant who "did engage in sexual intercourse."  In a subsequent instruction regarding the elements of these offenses, the jury was instructed that defendant was charged in counts 1, 3, and 4 with "sexual intercourse *or* sodomy," and that in order to find defendant guilty "the People must prove that[] [¶] . . . the Defendant engaged in an act of *sodomy or sexual intercourse* with [N.] Doe."  (Italics added.)  This instruction that defendant was charged in counts 1, 3, and 4 with "sexual intercourse or sodomy," and that "the People must prove that[] [¶] . . . the Defendant engaged in an act of sodomy or sexual intercourse," could be interpreted in a legally correct manner given that defendant was in fact charged by amended information with sodomy in counts 1 and 4, and sexual intercourse in count 3.  However, this instruction is correct only if it is understood to require a finding by the jury of sodomy, and not sexual intercourse, as to counts 1 and 4, and to require a finding of sexual intercourse, and not sodomy, at to count 3.

There is a reasonable likelihood that the jury did *not* understand this instruction in such a restrictive manner for counts 1, 3, and 4, in view of the language of the companion instruction for counts 2 and 5.  As we have explained, the instruction for counts 2 and 5 reasonably construed, and in view of the prosecutor's arguments, allowed the jury to find guilt on an individual count based on alternative acts (oral copulation or sexual penetration).  It is reasonable to believe that the jury understood the companion

22

instruction for counts 1, 3, and 4 in a similar manner, that is, guilt on an individual count could be based on either of the alternative acts listed in the instruction – sodomy or sexual intercourse. Indeed, the prosecutor reinforced this construction by telling the jury that it could "go and very safely mark guilty as to a few" of the counts, including "*Count One is sexual intercourse* with her, we saw that; and then you'll see in the other videos very clear evidence of that . . . ." Contrary to the prosecutor's argument, however, count 1 charged sodomy, not sexual intercourse. Moreover, the jury during deliberations expressed some confusion regarding the entire set of counts 1 through 5. On this record, in view of the instructional language for counts 1, 3, and 4; the language in the companion instruction for counts 2 and 5; and the prosecutor's arguments concerning both sets of counts, we determine that " ' "there is a reasonable likelihood that the jury misunderstood and misapplied the instruction" ' " regarding whether counts 1, 3, and 4 encompassed a specified single act, or alternative acts, of sodomy or sexual intercourse. (*Nelson*, *supra*, 1 Cal.5th at p. 544.)

### c. *Prejudice*

Having determined that it is reasonably likely that the jury misunderstood and misapplied the instructions for counts 1 through 5, we next analyze whether the instructional error was prejudicial. The instructions for counts 1 through 5 essentially presented the jury with two possible theories of guilt based on alternative sexual acts.

"[W]hen ' "a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect," ' " also known as " 'alternative-theory error,' " "[w]e evaluate the prejudice of such errors under the heightened standard of *Chapman v. California* (1967) 386 U.S. 18 . . . ." (*In re Ferrell* (2023) 14 Cal.5th 593, 602 (*Ferrell*).) "Under *Chapman*'s familiar standard, we reverse a conviction 'unless, after examining the entire cause, including the evidence, and considering all relevant circumstances,' the reviewing court 'determines the error was harmless beyond a reasonable doubt.' [Citation.] In the context of alternative-theory errors, this means we reverse ' "unless the

23

reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict." ' [Citations.]" (*Ibid.*)

"Given the standard of review for alternative-theory error, we do not view the evidence supporting the valid theory in the light most favorable to the prosecution, but instead consider whether a reasonable jury, given the findings actually made and the state of the evidence, could have found in favor of the defendant. [Citations.]" (*Ferrell, supra*, 14 Cal.5th at pp. 604-605.)

"Harmlessness can be shown ' "if the jury verdict on other points effectively embraces" ' the valid theory, ' "or if it is impossible, upon the evidence, to have found what the verdict *did* find without finding" ' the facts underlying the valid theory as well. [Citations.] 'In determining this impossibility or, more generally, whether the error was harmless, the reviewing court is not limited to a review of the verdict itself.' [Citation.] '[I]f " ' [n]o reasonable jury' " would have found in favor of the defendant on the' valid theory, 'given the jury's actual verdict and the state of the evidence, the error may be found harmless beyond a reasonable doubt.' [Citations.]" (*Ferrell, supra*, 14 Cal.5th at pp. 602-603.)

"In other words, a reviewing court must be persuaded that, in light of the jury's findings and the evidence at trial, any rational juror who made those findings would have made the additional findings necessary for a valid theory of liability, beyond a reasonable doubt, if the jury had been properly instructed. [Citation.] If the reviewing court determines beyond a reasonable doubt that any rational juror would have made the additional findings, based on the jury's actual verdict and the evidence at trial, the error is harmless because the presentation of the invalid theory to the jury made no difference. The error did not contribute to the verdict. [Citations.]" (*In re Lopez* (2023) 14 Cal.5th 562, 589 (*Lopez*).)

"The Attorney General bears the burden of showing that the error was harmless beyond a reasonable doubt. [Citations.]" (*Lopez, supra*, 14 Cal.5th at p. 585.)

24

### i. counts 2 & 5 (sexual penetration)

In this case, regarding counts 2 and 5 (sexual penetration), the jury was incorrectly instructed that a finding of guilt could be based on oral copulation as an alternative to sexual penetration.  First, we determine that " ' "it is impossible, upon the evidence," ' " for the jury to have found what it did on another count – that is, count 7, aggravated sexual assault of a child under the age of 14 by oral copulation – without finding the facts underlying a valid theory on at least either count 2 or count 5.  (*Ferrell*, *supra*, 14 Cal.5th at p. 602.)  Count 7 was the sole count in which defendant was charged with oral copulation, and defendant has not challenged the instruction for this count.  At trial, there was evidence of, at most, two acts of oral copulation:  (1) Doe reported to police that defendant kissed her in her front private part during the third incident, and (2) defendant admitted to the police that he videotaped an incident in which Doe performed oral sex on him, which is consistent with the video admitted at trial reflecting Doe orally copulating a male.  Given that one of these two acts of oral copulation must have formed the basis for the jury's finding of guilt on count 7, the jury had evidence of only one other act of oral copulation upon which it could have (incorrectly) based a finding of guilt with respect to count 2 or 5 which each charged only sexual penetration.  Therefore, it follows that either count 2 or 5 was necessarily based on a correct theory of guilt, that is, sexual penetration.  As " ' " '[n]o reasonable jury' " would have found in favor of the defendant on the' valid theory [of sexual penetration for at least count 2 or 5], 'given the jury's actual verdict [on count 7] and the state of the evidence, the error may be found harmless beyond a reasonable doubt' " as to either count 2 or 5.  (*Ferrell*, *supra*, 14 Cal.5th at p. 603.)  Second, regarding these two counts (2 & 5), the victim reported to the police that she was digitally penetrated in the second incident, she indicated in trial testimony that she was digitally penetrated in the second incident, and a video of the second incident shows

digital penetration.[12]  At the same time, as between the two counts for sexual penetration (counts 2 & 5), the prosecutor expressly (and incorrectly) argued to the jury that it could "very safely mark guilty" regarding "oral copulation, . . . Count Two."  " '[G]iven the jury's actual verdict [regarding count 7] and the state of the evidence [regarding sexual penetration], the error may be found harmless beyond a reasonable doubt' " regarding count 5 because " ' " '[n]o reasonable jury' " would have found in favor of the defendant on the' valid theory" on count 5.  (*Ferrell*, *supra*, 14 Cal.5th at p. 603.)  We will vacate the jury's finding of guilt on count 2 and allow the prosecutor the opportunity to retry defendant on this count.  We will allow the finding of guilt on count 5 to stand.

### ii.  counts 1, 3 & 4 (sodomy and sexual intercourse)

Regarding counts 1 (sodomy), 3 (sexual intercourse), and 4 (sodomy), which the jury was incorrectly instructed that a finding of guilt could be based on sodomy *or* sexual intercourse, we determine that "in light of the jury's findings and the evidence at trial, any rational juror who made those findings would have made the additional findings necessary for a valid theory of liability, beyond a reasonable doubt, if the jury had been properly instructed." (*Lopez*, *supra*, 14 Cal.5th at p. 589.)  We reach this conclusion for the following reasons.

Defendant was charged with three counts involving sodomy – counts 1, 4, and 6.  Defendant does not contend that the jury instruction for count 6 improperly allowed the jury to convict him for an uncharged or alternative offense.  Regarding the evidence, Doe *consistently* testified at trial, and reported to the police, that defendant sodomized her in

---

[12] The jury was instructed pursuant to CALCRIM No. 1128 that sexual penetration "means penetration, however slight, of the genital or anal opening of the other person by any foreign object, substance, instrument, device, or any unknown object for the purpose of sexual abuse, arousal, or gratification.  [¶]  An unknown object includes any foreign object, substance, instrument or device, or any part of the body, including a penis, if it is not known what object penetrated the opening.  [¶]  A foreign object, substance, instrument or device includes any part of the body except a sexual organ." (Italics & boldface omitted.)

each of the three incidents.  The defense theory at trial was that no sodomy occurred at all because the victim was "mistaken" and a child such as Doe "might not know the difference" between vaginal and anal penetration.  However, given Doe's consistent testimony and report to the police regarding three incidents of sodomy, and given that the jury found defendant guilty of sodomy as to the third incident in count 6 – a finding of guilt untainted by defendant's claim of alternative-theory instructional error, we determine that "in light of the jury's findings and the evidence at trial, any rational juror who made those findings would have made the additional findings necessary for a valid theory of liability, beyond a reasonable doubt, if the jury had been properly instructed" regarding counts 1 and 4.  (*Lopez*, *supra*, 14 Cal.5th at p. 589.)

Count 3 was the only charge involving sexual intercourse.  Regarding the evidence, Doe's trial testimony and her report to the police established that defendant engaged in sexual intercourse with her at least once when she was 10 years old.  Significantly, the video admitted at trial *irrefutably* established that defendant engaged in sexual intercourse with Doe.  Given the irrefutable evidence of sexual intercourse for count 3, and in view of the jury's findings and the state of the evidence regarding the sodomy counts, we determine that the instructional error regarding each of counts 1 (sodomy), 3 (sexual intercourse), and 4 (sodomy) "is harmless because the presentation of the invalid theory [for these three counts] to the jury made no difference.  The error did not contribute to the verdict." (*Lopez*, *supra*, 14 Cal.5th at p. 589.)

We observe that defendant contends that the unanimity instruction in this case allowed the jurors to "convict on all five counts because they all agreed he committed a total of five acts, and agreed on *at least one* of the specified acts."  We do not believe the unanimity instruction can reasonably be construed in this manner.  In an instruction regarding multiple counts, the jurors were instructed that each count was a "separate crime" and that the jurors "must consider each count separately and return a separate verdict for each one."  (See CALCRIM No. 3515.)  In the unanimity instruction, the

27

jurors were told that defendant was charged with sexual offenses in counts 1 through 7, that the "People have presented evidence of more than one act to prove the Defendant committed these offenses," and that the jurors "must not find the Defendant guilty, unless [the jurors] all agree the People have proved the Defendant committed at least one of these acts and [the jurors] all agree on which act he committed." (See CALCRIM No. 3500.) Construing the separate act and unanimity instructions together, the jurors would have reasonably understood that in "consider[ing] each count separately," they had to "all agree on which act he committed."

In sum, we will order the jury's finding of guilt on count 2 (sexual penetration) be vacated and the prosecutor be given the opportunity to retry defendant on this count.

**B.** *Pinpoint Instruction Regarding Sodomy*

Defendant contends that the trial court erred when it refused his request for a pinpoint instruction on sodomy. He argues that the error violated his constitutional rights to a jury trial, to due process, and to present a defense, and that the error was prejudicial.

The Attorney General contends that the trial court reasonably denied the proposed instruction and that any error was harmless.

**1. Trial Court Proceedings**

The charges against defendant included two counts of sodomy with a child aged 10 or younger (§ 288.7, subd. (a); counts 1 & 4) and one count of aggravated sexual assault of a child under the age of 14 by sodomy (§ 269, subd. (a)(3); count 6). By written request, defendant proposed that the jury be given the following instruction: "The sexual penetration element of sodomy requires penetration past the buttocks and into the perianal area, but does not require penetration beyond the perianal folds or anal margin. The crime of sodomy requires the perpetrator to penetrate the anal opening and to make contact with the anus. The prosecution must prove the required penetration by proof beyond a reasonable." In support of the proposed instruction, defendant cited *People v. Paz* (2017) 10 Cal.App.5th 1023 (*Paz*).

At the close of evidence and outside the presence of the jury, the trial court summarized for the record the discussion it apparently had with the parties regarding jury instructions. During this summary, the court denied defendant's request for a "pinpoint instruction" regarding sodomy. The court explained: "The concern that I had and the reason I'm denying the instruction is because it uses very sophisticated anatomical language, which I believe will not be familiar to or understood by all jurors necessarily, and I think for that reason it is more confusing than helpful. [¶] However, I've indicated to both counsel that they are free to argue what we all know to be the state of the law perhaps in simpler terms, specifically with respect to the level of penetration that is actually required to accomplish the offenses of sodomy and sexual penetration and sexual intercourse. So for that reason, counsel may certainly argue this, but the pinpoint instruction was denied."

The jury was instructed pursuant to CALCRIM No. 1030 in relevant part that sodomy means "any penetration, no matter how slight, of the anus of one person by the penis of another person. Ejaculation is not required."

In argument to the jury, the prosecutor contended that Doe testified that defendant's penis "went inside of her when she talked about sexual intercourse and the sodomy, and she described that it was painful. . . . [¶] And the key thing, again, is no matter how slight. So again from the videos themselves, you can see there is at least partial penetration. And when you couple that with [Doe's] description and testimony, you can safely conclude that there was penetration. Now, that applies in both sexual intercourse and sodomy as well."

In argument to the jury, defense counsel contended that a child such as Doe "might not know the difference" between vaginal and anal penetration. Counsel argued that Doe was mistaken that defendant committed sodomy when he penetrated her from behind. Counsel contended that the video where defendant "is behind her . . . appears" to show "that he is not penetrating her anus, that he is penetrating her vagina." Counsel

29

argued that in another part of the same video, or a different video, "you can see her anus, you can see the area in between her anus and her vagina and you can see her vagina. [¶] In the area in between her anus and her vagina there appears to be an injury. Something happened, something hurt, it looks like a little bit of blood, there was an injury there, but it was not her anus. [¶] And again this is not a fun argument for me to be making to you. But you can understand why she might think he penetrated her there or that she felt pain there because it was generally in that area. But for sodomy, the law requires the penis to penetrate the anus, not the butt cheeks, not other areas around, but actually has to penetrate the anus. I don't believe that happened, I think she's mistaken, and I think if you watch [the] video, knowing what I just told you, you will see it. [¶] I think it's also noteworthy that [defendant], in his confession to the police, in his confession to now his ex, he admits to things, but there was no admission of sodomy. So I think that's something you should consider as well."

In reply, the prosecutor argued that Doe testified about penetration by "say[ing] things like 'it went inside me' and 'it hurt,' and she can distinguish between where she goes poop, one can assume a 12-year-old girl knows the sensation of excrement or defecating, and she knows the sensation of urinating . . . ."

### 2. Law

"[O]n request, a criminal defendant is entitled to pinpoint instructions that relate particular facts to an element of the charged offense and highlight or explain a theory of the defense if the instructions are supported by substantial evidence. [Citation.]" (*Nelson*, *supra*, 1 Cal.5th at p. 542.) However, "a trial court may properly refuse an instruction offered by the defendant if it incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence [citation]." (*People v. Moon* (2005) 37 Cal.4th 1, 30.)

We review for an abuse of discretion a trial court's refusal to give a pinpoint instruction on the basis that it was argumentative, duplicative, or potentially confusing.

30

(See *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 497 (*Mora and Rangel*) ["trial court did not abuse its discretion by denying the requested instruction as duplicative"]; *People v. Kraft* (2000) 23 Cal.4th 978, 1063 (*Kraft*) ["trial court acted within its discretion in refusing as argumentative the requested instructions"].)  "An abuse of discretion will be 'established by "a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' [Citation.]" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390 (*Bryant*).)[13]

By statute, "[s]odomy is sexual conduct consisting of contact between the penis of one person and the anus of another person.  Any sexual penetration, however slight, is sufficient to complete the crime of sodomy."  (§ 286, subd. (a).)  Consistent with the statutory definition of sodomy, CALCRIM No. 1030, which was given in this case, states that sodomy is "any penetration, no matter how slight, of the anus of one person by the penis of another person."

In *Paz*, the appellate court addressed whether there was substantial evidence of sodomy in the case before it.  (*Paz*, *supra*, 10 Cal.App.5th at p. 1029.)  In analyzing the issue, the appellate court determined that section 289's definition of sexual penetration,

---

[13] Citing *People v. Manriquez* (2005) 37 Cal.4th 547, *People v. Cole* (2004) 33 Cal.4th 1158, 1210, and *People v. Johnson* (2009) 180 Cal.App.4th 702, defendant asserts that the standard of review is de novo.  However, *Manriquez* pertained to a different issue, namely, whether the evidence was sufficient to require an instruction on imperfect self-defense.  (*Manriquez*, *supra*, at pp. 581-582.)  *Cole* analyzed the "legal adequacy" of the instructions given by a trial court, and there is no indication that the defendant requested a pinpoint instruction.  (See *Cole*, *supra*, at p. 1210.)  To the extent the appellate court in *Johnson*, *supra*, at page 707 suggests that de novo review is the proper standard of review for a trial court's refusal to give a pinpoint instruction on the basis that it was argumentative, duplicative, or potentially confusing, we will instead follow the California Supreme Court's opinions in *Mora and Rangel*, *supra*, 5 Cal.5th at page 497, and *Kraft*, *supra*, 23 Cal.4th at p. 1063, which applied the abuse of discretion standard.  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*).)

31

which includes penetration of the "anal opening" (*id.*, subd. (k)(1)), "applies equally to the penetration element of section 286" regarding sodomy (*Paz*, *supra*, at p. 1033). In determining the meaning of anal opening, the appellate court concluded that the crime of sodomy requires "penetration of the tissues that surround and encompass the lower border of the anal canal—that is, it requires penetration past the buttocks and into the perianal area but does not require penetration beyond the perianal folds or anal margin." (*Paz*, *supra*, at p. 1038.) In a footnote, the appellate court "invite[d] the Advisory Committee on Criminal Jury Instructions to consider revisions to CALCRIM No. 1030," as that instruction "does not address the sexual penetration element of the sodomy statute (§ 286)." (*Id.* at p. 1033, fn. 8, italics omitted.) The appellate court did not specifically address the instruction, however, as none of the parties in the case before it had challenged the instruction. (*Id.* at p. 1033, fn. 8.) The appellate court ultimately determined that there was sufficient evidence in the case before it to support the defendant's conviction for sodomy by force. (*Id.* at p. 1041; see *id.* at p. 1027.)

### 3. Analysis

We conclude that the trial court did not abuse its discretion when it refused to give defendant's requested pinpoint instruction on sodomy. The jury was instructed pursuant to CALCRIM No. 1030, consistent with section 286, subdivision (a), that sodomy is "any penetration, no matter how slight, of the anus of one person by the penis of another person." Defendant's proposed instruction stated in part, "The sexual penetration element of sodomy requires penetration past the buttocks and into the perianal area, but does not require penetration beyond the perianal folds or anal margin. The crime of sodomy requires the perpetrator to penetrate the anal opening and to make contact with the anus." It was not unreasonable for the trial court to determine that this proposed instruction, which included terms such as "perianal area," "perianal folds," and "anal margin," contained "sophisticated anatomical language" that would be confusing to the jury. In this regard, even the appellate court in *Paz* observed that "medical professionals

cannot agree on what to call the areas between the rectum and the buttocks," "the 'perianal region is not well defined' [citation], and '[t]here exists no generally accepted definition of its outer limit.' [Citations.] Indeed, 'much confusion continues about definitions and nomenclature' of these structures generally. [Citations.]" (*Paz*, *supra*, 10 Cal.App.5th at p. 1035.) On appeal, defendant acknowledges that, at a minimum, the term "perianal" may not be a commonly understood word. In this case, we determine that the trial court's ruling that it would be confusing to instruct the jury with defendant's proposed instruction was not " ' "arbitrary, capricious, or patently absurd." ' " (*Bryant*, *supra*, 60 Cal.4th at p. 390.)

Further, the trial court's refusal to give defendant's pinpoint instruction on sodomy did not preclude defendant from presenting his defense. The jury was instructed pursuant to CALCRIM No. 1030 that sodomy required the penis to penetrate the anus. As recounted above, defendant was permitted to argue that Doe mistakenly believed that she had been sodomized based on the touching of her buttocks or other areas around her anus, rather than penetration of the anus itself. We therefore reject defendant's federal constitutional claims.

For these reasons, we conclude that the trial court did not err when it denied defendant's requested pinpoint instruction on sodomy.

### C. *CALCRIM No. 1191B*

Defendant contends that the trial court erred by failing to conduct the requisite weighing process before instructing the jury with CALCRIM No. 1191B, which allows a jury to conclude from proof of one charged sex offense that a defendant was inclined to commit and did commit other charged sex offenses. Defendant also argues that the instruction is unconstitutional although he acknowledges that the California Supreme Court approved a similar instruction in *People v. Villatoro* (2012) 54 Cal.4th 1152 (*Villatoro*). He contends that the error in giving the instruction was prejudicial.

33

The Attorney General contends that the instruction was proper pursuant to *Villatoro*, that it may be implied that the trial court conducted the requisite weighing process before giving the instruction, and that there is no basis to find prejudice in giving the instruction to the jury.

## 1. Trial Court Proceedings

At the close of evidence and outside the presence of the jury, the trial court "memorialize[d]" for the record the discussions that had taken place regarding jury instructions. Regarding CALCRIM No. 1191B, the court explained that the prosecutor had "requested it somewhat late, having neglected to include it in his original request by oversight," and that defendant had objected to the instruction. In allowing the instruction, the court stated that "this is a very clear statement of the applicable law, and so it will be given."

The jury was subsequently instructed pursuant to CALCRIM No. 1191B as follows: "The People presented evidence that the defendant committed the crimes of sodomy, sexual intercourse and sexual penetration with a child 10 years of age or younger, and aggravated sexual assault, as charged in Counts 1 through 7. [¶] If the People have proved beyond a reasonable doubt that the defendant committed one or more of these crimes, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit and did commit the other sex offenses charged in this case. [¶] If you find that the defendant committed one or more of these crimes, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of another crime. The People must still prove each charge beyond a reasonable doubt."

The jury was also instructed with CALCRIM No. 220, which states that a defendant is "presumed to be innocent," defines "reasonable doubt," and explains that

34

guilt must be proven beyond a reasonable doubt in order to overcome the presumption of innocence.

## 2. Law

"Pursuant to Evidence Code section 1108, pattern jury instruction CALCRIM [former] No. 1191,[14] explains to a jury that it may consider a defendant's *uncharged* sexual offense as evidence of his or her propensity to commit a charged sexual offense." (*Villatoro*, *supra*, 54 Cal.4th at p. 1156, fn. omitted & italics added.) In *Villatoro*, the California Supreme Court upheld a trial court's modification of CALCRIM former No. 1191 to allow a jury to consider the defendant's *charged* sexual offenses as evidence of his propensity to commit other charged sex offenses. (*Villatoro*, *supra*, at p. 1156.)

Specifically, the jury instruction in *Villatoro* stated: " 'The People presented evidence that the defendant committed the crime of rape as alleged in counts 2, 4, 7, 9, 12 and 15 and the crime of sodomy as alleged in count 14. These crimes are defined for you in the instructions for these crimes. [¶] If you decide that the defendant committed one of these charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit the other charged crimes of rape or sodomy, and based on that decision also conclude that the defendant was likely to and did commit the other offenses of rape and sodomy charged. If you conclude that the defendant committed a charged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove the defendant is guilty of another charged offense. The People must still prove each element of every charge beyond a reasonable doubt and prove it beyond a reasonable doubt before you may consider one charge as proof of another charge.' " (*Villatoro*, *supra*, 54 Cal.4th at p. 1167, fn. omitted.)

---

[14] Now CALCRIM No. 1191A.

The California Supreme Court concluded in *Villatoro* that "nothing in the language of [Evidence Code] section 1108 restricts its application to uncharged offenses. Indeed, the clear purpose of [Evidence Code] section 1108 is to permit the jury's consideration of evidence of a defendant's propensity to commit sexual offenses. 'The propensity to commit sexual offenses is not a common attribute among the general public. Therefore, evidence that a particular defendant has such a propensity is especially probative and should be considered by the trier of fact when determining the credibility of a victim's testimony.' [Citations.] '[C]ase law clearly shows that evidence that [a defendant] committed other sex offenses is at least circumstantially *relevant* to the issue of his disposition or propensity to commit these offenses.' [Citations.] . . . Whether an offense is charged or uncharged in the current prosecution does not affect in any way its relevance as propensity evidence." (*Villatoro*, *supra*, 54 Cal.4th at p. 1164.)

In upholding the instruction, the California Supreme Court also determined that "the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity. Thus, there was no risk the jury would apply an impermissibly low standard of proof. [Citation.]" (*Villatoro*, *supra*, 54 Cal.4th at p. 1168.) The California Supreme Court further explained that the trial court "instructed the jury with CALCRIM No. 220, which defines the reasonable doubt standard and reiterates that the defendant is presumed innocent; it also explains that only proof beyond a reasonable doubt will overcome that presumption. The modified version of CALCRIM [former] No. 1191 did not impermissibly lower the standard of proof or otherwise interfere with defendant's presumption of innocence." (*Ibid.*)

The California Supreme Court indicated that a trial court should "consider[] [Evidence Code] section 352 factors when deciding whether to permit the jury to infer a defendant's propensity based on this evidence." (*Villatoro*, *supra*, 54 Cal.4th at p. 1163.) The California Supreme Court explained that " '[e]ven where a defendant is charged with multiple sex offenses, they may be dissimilar enough, or so remote or unconnected to

36

each other, that the trial court could apply the criteria of [Evidence Code] section 352 and determine that it is not proper for the jury to consider one or more of the charged offenses as evidence that the defendant likely committed any of the other charged offenses.' " (*Ibid.*)

In *Villatoro*, the defendant argued that the trial court failed to undertake an Evidence Code section 352 analysis before giving the modified instruction. (*Villatoro*, *supra*, 54 Cal.4th at p. 1168.) The California Supreme Court, observing that an express statement by the trial court that it undertook such an analysis is not required, determined that trial court implicitly conducted an Evidence Code section 352 analysis, where the trial court stated, " '[CALCRIM No.] 1191, for the record, I've given you both a copy based on the instruction given in [*People v.*] *Wilson* [(2008) 166 Cal.App.4th 1034].' " (*Villatoro*, *supra*, at p. 1168.) In this regard, the California Supreme Court agreed with the Court of Appeal, which had reasoned: " 'The trial court's express reliance on a key case in this area, considered in light of the entire record, allows us to infer that the trial court gave the instruction because it found that all the requirements of the holding in *Wilson*, including [an Evidence Code] section 352 analysis, had been satisfied.' " (*Ibid.*)

The California Supreme Court further determined that, "[i]n any event, any error in failing to conduct such an analysis was harmless. [Citation.]" (*Villatoro*, *supra*, 54 Cal.4th at p. 1168.) In the case before the court, the defendant "was charged with committing various offenses, including rape, against five women between 2005 and 2008." (*Id.* at p. 1156.) The court reasoned that "although the victims' accounts of their respective attacks had minor differences, their versions were strikingly similar in various respects. Defendant forced or lured each woman into his car and drove to a residential area, where he forced each woman to submit to sexual acts by pointing a weapon at them. He yelled at each victim not to look at him, and afterwards ordered each out of his car. The evidence was highly probative of defendant's propensity to commit such crimes, and its value substantially outweighed any prejudice." (*Id.* at pp. 1168-1169.) The California

37

Supreme Court concluded that "under the facts of this case, the trial court did not err in giving the modified instruction." (*Id.* at p. 1169.) The California Supreme Court stated that it was "not decid[ing], however, whether courts should give such an instruction in the future." (*Ibid.*)

### 3. Analysis

Defendant contends that *Villatoro*'s holding should be reconsidered and that CALCRIM No. 1191B is unconstitutional because it interferes with the presumption of innocence and lessens the burden of proof. He acknowledges, however, that this court is bound by the California Supreme Court's decision in *Villatoro* (see *Auto Equity*, *supra*, 57 Cal.2d at p. 455), and he fails to identify any material difference between the wording of the instruction given in *Villatoro* and CALCRIM No. 1191B. (See *People v. Meneses* (2019) 41 Cal.App.5th 63, 66, 67-68 [upholding the use of CALCRIM No. 1191B based on *Villatoro*].) We therefore reject his contention that CALCRIM No. 1191B is unconstitutional.

Defendant also argues that the trial court failed to conduct the requisite weighing process before instructing the jury with CALCRIM No. 1191B, and that the resultant error in giving the instruction was prejudicial. Assuming, without deciding, that the trial court's statement – that the instruction "is a very clear statement of the applicable law" – is insufficient to imply that the court conducted the requisite weighing process, we determine that "any error in failing to conduct such an analysis was harmless" (*Villatoro*, *supra*, 54 Cal.4th at p. 1168). This is not a case in which the multiple charged sex offenses were " 'dissimilar enough, or so remote or unconnected to each other, that the trial court could apply the criteria of [Evidence Code] section 352 and determine that it is not proper for the jury to consider one or more of the charged offenses as evidence that the defendant likely committed any of the other charged offenses.' " (*Id.* at p. 1163.) To the contrary, the evidence in the case reflected that defendant committed multiple sex acts against the same victim on each of three separate occasions when the victim's mother

was not present at the residence. "The evidence was highly probative of defendant's propensity to commit such crimes, and its value substantially outweighed any prejudice." (*Id.* at p. 1169.)

### D. *CALCRIM No. 3551*

Defendant contends that the trial court abused its discretion in ordering the jurors, who indicated that they could not reach an agreement on three counts, to continue deliberating without first inquiring of them whether there was a reasonable probability of agreement. He further argues that his constitutional right to due process was violated by the court instructing the jury with CALCRIM No. 3551 because it coerced the jury into reaching a verdict. Defendant contends that his claim has not been forfeited and that, to the extent that it has, his trial counsel rendered ineffective assistance of counsel.

The Attorney General contends that defendant forfeited the claim, and that in any event the trial court's response to the jury's note was proper.

### 1. Trial Court Proceedings

After deliberating for approximately 12 hours over the course of four days, the jury sent a note to the trial court shortly before 11:00 a.m. on the fourth day stating, "What do we do if we can't come to an agreement on charges?? 11-1 on 3 counts that are left to decide. How long should we cont[i]nue?" At a hearing with defendant and counsel present, the trial court stated its intention to instruct the jury with CALCRIM No. 3551. No counsel stated anything on the record before the jury was subsequently brought into the courtroom.

The trial court proceeded to instruct the jury pursuant to CALCRIM No. 3551 as follows:

"Sometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict on one or more counts. Please consider the following suggestions.

"Do not hesitate to re-examine your own views. Fair and effective jury deliberations require a frank and forthright exchange of views.

"Each of you must decide the case for yourself and form your individual opinion after you have fully and completely considered all of the evidence with your fellow jurors. It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment. Do not change your position just because it differs from that of other jurors or just because you or others want to reach a verdict. Both the People and the Defendant are entitled to the individual judgment of each juror.

"It is up to you to decide how to conduct your deliberations. You may want to consider new approaches in order to get a fresh perspective.

"Let me know whether I can do anything to help you further, such as give additional instructions or clarify instructions I have already given you.

"Please continue your deliberations at this time. If you wish to communicate with me further, please do so in writing using the form my bailiff has given you."

After the jury left the courtroom, the trial court explained to counsel, "It's clear to me from the jury's note that they appear to have reached a verdict or verdicts on five of the counts, because they've indicated a difficulty with only three. [¶] It's my intention, counsel, to have them continue deliberating through the day and then at the end of the day I'm going to bring them back in and ask them whether or not they've been able to reach a verdict and whether or not they believe there's anything else that is going to assist them in doing so. [¶] But we are at midday, so I'll give them the rest of the afternoon. So if we don't have a verdict before then, I'm probably going to bring them out around 4:00 o'clock. So you're welcome to stay. [¶] They only have half an hour or so to continue deliberating at this point before they have to take their recess and then we'll go from there." Defense counsel responded, "Okay." The court subsequently

40

stated, "They were nodding, so I don't know what that means.  We'll be in recess until we hear from them further."

Shortly after 12:00 noon, and about one hour after being instructed with CALCRIM No. 3551, the jury indicated to the trial court that it had reached a verdict on all counts.

## 2.  Law

"Section 1140[15] allows a trial court to discharge a jury and declare a mistrial if the court determines that the proper period of time for deliberation has expired and 'there is no reasonable probability' that the jurors can agree on a verdict."  (*People v. Debose* (2014) 59 Cal.4th 177, 209 (*Debose*).)  "The decision whether to declare a hung jury or to order further deliberations rests in the trial court's sound discretion.  [Citations.]"  (*Ibid*.)  In making this determination, a trial court is not required to ask the jury about the possibility of agreement.  (*People v. Peoples* (2016) 62 Cal.4th 718, 782 (*Peoples*).)  On the other hand, "a court 'is not bound to take as final the statement of the [jurors] that they cannot agree upon a verdict.' [Citation.]"  (*People v. Valdez* (2012) 55 Cal.4th 82, 159.)  A trial court " 'may direct further deliberations upon its reasonable conclusion that such direction would be perceived " 'as a means of enabling the jurors to enhance their understanding of the case rather than as mere pressure to reach a verdict on the basis of matters already discussed and considered.' " ' [Citation.]"  (*Debose*, *supra*, at p. 209.)

Rule 2.1036(a) of the California Rules of Court provides that "[a]fter a jury reports that it has reached an impasse in its deliberations, the trial judge may, in the presence of counsel, advise the jury of its duty to decide the case based on the evidence while

---

[15] Section 1140 states, "Except as provided by law, the jury cannot be discharged after the cause is submitted to them until they have agreed upon their verdict and rendered it in open court, unless by consent of both parties, entered upon the minutes, or unless, at the expiration of such time as the court may deem proper, it satisfactorily appears that there is no reasonable probability that the jury can agree."

keeping an open mind and talking about the evidence with each other.  The judge should ask the jury if it has specific concerns which, if resolved, might assist the jury in reaching a verdict."  Rule 2.1036(b) of the California Rules of Court states that "[i]f the trial judge determines that further action might assist the jury in reaching a verdict, the judge may:  [¶]  (1) Give additional instructions;  [¶]  (2) Clarify previous instructions;  [¶] (3) Permit attorneys to make additional closing arguments; or  [¶]  (4) Employ any combination of these measures."

The California Supreme Court has cautioned that a trial court " 'must take care to exercise its power without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency [citation].' " (*Debose*, *supra*, 59 Cal.4th at p. 209.)  "Coercion occurs where 'the trial court, by insisting on further deliberations, expresse[s] an opinion that a verdict should be reached.'  [Citation.]" (*Peoples*, *supra*, 62 Cal.4th at p. 783.)  A " 'claim that the jury was pressured into reaching a verdict depends on the particular circumstances of the case.'  [Citations.]" (*People v. Brooks* (2017) 3 Cal.5th 1, 88-89.)

### 3.  Analysis

Assuming, without deciding, that defendant's claim has not been forfeited, we determine that he fails to show the trial court erred by ordering further deliberations and by instructing the jury with CALCRIM No. 3551.

First, defendant fails to establish that the trial court abused its discretion by ordering the jury to continue deliberating without conducting a further inquiry.  As defendant acknowledges, a trial court is not required to question the jurors in determining whether there is a reasonable probability that the jurors can agree on a verdict. (*Peoples*, *supra*, 62 Cal.4th at p. 782.)  Moreover, before ordering further deliberation in this case, the trial court received the jury note, which stated,  "What do we do if we can't come to an agreement on charges??  11-1 on 3 counts that are left to decide.  How long should we cont[i]nue?"  Significantly, the jurors in this note did *not* affirmatively state that they

could not reach an agreement; they only asked what to do "if" an agreement could not be reached. In addition, the court could reasonably interpret the jury's question about "[h]ow long should [they] cont[i]nue" to deliberate as an indication that the jury had *not* reached a conclusive impasse, that they were open to conducting further deliberations, and that there was a reasonable probability that the jurors could agree on a verdict, particularly given that they had reached agreement on five other counts. On this record, we believe that the trial court had sufficient information upon which to make a reasoned determination and did not abuse its discretion in finding that there was a "reasonable probability" (§ 1140) that the jury could agree on a verdict. (See *Debose*, *supra*, 59 Cal.4th at p. 209.)

Second, defendant fails to establish that the trial court's instruction pursuant to CALCRIM No. 3551 was coercive and violated due process. Because defendant challenges certain portions of the instruction given to the jury, we again recite the instruction here, with the portions challenged by defendant in italics:

"*Sometimes juries that have had difficulty reaching a verdict are able to resume deliberations and successfully reach a verdict* on one or more counts. Please consider the following suggestions.

"Do not hesitate to *re-examine your own views*. Fair and effective jury deliberations require a frank and forthright exchange of views.

"Each of you must decide the case for yourself and form your individual opinion after you have fully and completely considered all of the evidence with your fellow jurors. *It is your duty as jurors to deliberate with the goal of reaching a verdict if you can do so without surrendering your individual judgment*. Do not change your position just because it differs from that of other jurors or just because you or others want to reach a verdict. Both the People and the Defendant are entitled to the individual judgment of each juror.

43

"It is up to you to decide how to conduct your deliberations. You may want to consider new approaches in order to get a fresh perspective.

"Let me know whether I can do anything to help you further, such as give additional instructions or clarify instructions I have already given you.

"Please continue your deliberations at this time. If you wish to communicate with me further, please do so in writing using the form my bailiff has given you." (See CALCRIM No. 3551.)

Defendant acknowledges that the appellate court in *People v. Moore* (2002) 96 Cal.App.4th 1105 held that an instruction similar to the one used in the instant case did not pressure the jury to reach a verdict. The jury instruction in *Moore* included language similar to the language that defendant challenges in this appeal. (*Id.* at pp. 1118-1119.) We agree with the following analysis in *Moore*, which applies equally in the instant case: "Contrary to defendant's argument on appeal, the jury was never directed that it was required to reach a verdict, nor were any constraints placed on any individual juror's responsibility to weigh and consider all the evidence presented at trial. The trial court also made no remarks either urging a verdict be reached or indicating possible reprisals for failure to reach an agreement. In short, it is clear the trial court took great care in exercising its power 'without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency. . . . Nothing in the trial court's comment in the present case properly may be construed as an attempt to pressure the jury to reach a verdict . . . .' [Citation.]" (*Id.* at p. 1121; see *People v. Sta Ana* (2021) 73 Cal.App.5th 44, 64 [explaining that "[t]he trial court's supplemental direction to the jury, based on CALCRIM No. 3551, was framed as a series of suggestions, designed to ensure the jury did not feel coerced to reach a certain result"].)

Defendant contends that the instruction was nevertheless coercive in this case, including because the trial court was aware that the jury was split 11 to 1, the instruction was given at the time of the split rather than with the jury's original instructions, and

44

guilty verdicts were rendered about an hour after the instruction was given. We are not persuaded that the instruction was necessarily coercive under these circumstances. For example, although the California Supreme Court has "recognized the increased '*potential for coercion once the trial judge has learned that a unanimous judgment of conviction is being hampered by a single holdout juror*' [citation], [the California Supreme Court] ha[s] rejected the view that denial of a mistrial in that circumstance is 'inherently coercive' [citation]." (*People v. Bell* (2007) 40 Cal.4th 582, 617-618.) In *Bell*, "the trial court knew (from the foreman's unprompted revelation in jury note No. 20) that the jury was split 11 to 1 for conviction and that the split involved an issue (whether the taking of property was accomplished by force or fear) that had troubled the jury since early in its deliberations." (*Id.* at p. 617.) The California Supreme Court concluded that, "[d]espite the 11-to-one split, the trial court could reasonably believe further deliberations would lead to a unanimous understanding of the case among the jurors." (*Id.* at p. 618.) Likewise, in this case, as we have explained, it was reasonable to believe that the jury could reach agreement based on the content of the jury's note, which indicated that it was open to further deliberating, and the fact that it had already reached agreement on the majority of the counts. Instructing the jury pursuant to CALCRIM No. 3551 was not coercive under these circumstances. Further, "where, as here, defense counsel does not object to a supplemental instruction, 'such an omission indicates that the potential for coercion argued now was not apparent to one on the spot.' [Citation.]" (*People v. Whaley* (2007) 152 Cal.App.4th 968, 983.)

Defendant contends that the jury was deliberating during the onset of the COVID-19 pandemic when the county issued a shelter-in-place order. He argues that this circumstance "add[ed] to the pressure on the holdout juror to reach a verdict so that [the jury] could go home." We are not persuaded by this argument. In this case, the trial court told the jury that it would "do anything within [its] power to make sure that [the jury felt] as comfortable and secure as is possible under these circumstances," including

45

offering a larger space, such as the entire courtroom, for deliberations. The court told the jury to let the court know "anything else that [they] might think would make [them] feel more comfortable and secure as [they are] conducting deliberations." Defendant does not provide a record citation showing that the jury responded with any such requests to the court regarding COVID-19 accommodations. In fact, the jury continued deliberating that day, and returned to deliberate the following morning, before sending the note indicating that they had reached verdicts on all but three counts.

In sum, we conclude that the trial court did not abuse its discretion by ordering the jury to continue deliberating without conducting a further inquiry and that the trial court's instruction pursuant to CALCRIM No. 3551 was not coercive and did not violate defendant's right to due process.

### E. *Cumulative Error*

Defendant contends that the combined effect of the individual errors during trial was prejudicial. As we have found error only regarding the instructions permitting conviction on alternate theories, we reject defendant's cumulative error argument.[16]

### F. *Sentencing Issues and Abstract of Judgment*

Defendant contends that the trial court committed sentencing error, including by finding that counts 6 and 7 occurred on "separate occasions" and that full-term consecutive sentences were therefore mandatory (§ 667.6, subd. (d)). He also argues that the abstract of judgment requires correction. Because we are reversing the judgment, we do not reach defendant's claims of error concerning sentencing or the abstract of judgment.

---

[16] Although we assumed, without deciding, that the trial court failed to conduct the requisite weighing process before instructing the jury with CALCRIM No. 1191B, we determined that "any error in failing to conduct such an analysis was harmless" (*Villatoro*, *supra*, 54 Cal.4th at p. 1168) and that the jury was properly instructed with CALCRIM No. 1191B.

## IV.  DISPOSITION

The judgment is reversed.  The trial court shall vacate defendant's conviction on count 2 (Pen. Code, § 288.7, subd. (b); sexual penetration with a child aged 10 or younger).  The convictions on all other counts remain.  The prosecution may elect to retry defendant on count 2.  If the prosecution elects not to retry defendant on count 2, the trial court shall resentence defendant.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
LIE, J.

_____
BROMBERG, J.

*People v. Martinez*
**H048748**